```
UNITED STATES BANKRUPTCY COURT              FOR PUBLICATION
SOUTHERN DISTRICT OF NEW YORK
------------------------------X
In re:                        :
                              :             Chapter 11
KOLLEL MATEH EFRAIM, LLC, and :             Case No. 04-16410(SMB)
MATEH EPHRAIM LLC, d/b/a      :                     04-17525(SMB)
KOLLEL MATEH EFRAIM, LLC,     :
                              :
              Debtor.         :
------------------------------X
```

**OPINION AND ORDER DENYING
MOTION FOR SUMMARY JUDGMENT**

**A P P E A R A N C E S:**

BACKENROTH, FRANKEL & KRINSKY, LLP
Attorneys for Debtors
489 Fifth Avenue
New York, NY 10017

    Mark Frankel, Esq.
    Scott Krinsky, Esq.
        Of Counsel


LAW OFFICES OF DAVID CARLEBACH, ESQ.
Attorneys for Helen-May Holdings LLC
40 Exchange Place
New York, New York 10005

    David Carlebach, Esq.
        Of Counsel

**STUART M. BERNSTEIN
Chief United States Bankruptcy Judge**

       The debtor, Kollel Mateh Efraim, LLC, is the assignee of a contract to purchase certain real property owned by Helen-May Holdings, Inc. ("Helen-May"). After a dispute arose between the parties, the debtor filed this chapter 11 case, and the parties engaged in litigation over the contract and the chapter 11 case. At the conclusion of an evidentiary hearing, counsel for the

parties stipulated to a settlement or their disputes on the record in open court.

Helen-May contends that its (former) attorney lacked the authority to settle, and refuses to consummate it. The debtor moved to enforce the settlement, and initially, the motion is being treated as one for summary judgment on the issue of apparent authority. For the reasons that follow, the motion is denied.

**BACKGROUND**

**A.    Pre-Bankruptcy Transactions**

On or about April 29, 2004, Helen-May entered into a contract (the "Contract") to sell certain real property located in Fosterdale, New York (the "Property") to the debtor's assignor, Aron Fixler, for $1.4 million. Helen-May received a down payment of $140,000. On May 18, 2004, Fixler assigned the Contract to the debtor.

The Contract contained a "time is of the essence clause," but by agreement, the parties adjourned the closing twice, first to September 27, 2004, and thereafter, to November 29, 2004. Shortly after the parties agreed to the second extension, the debtor allegedly discovered that the property consisted of 60 acres instead of 77. As a result, the debtor stopped payment on a

$30,000 check paid in connection with the second extension agreement.

**B.    The Bankruptcy Proceedings**

The debtor filed this chapter 11 case on October 4, 2004, and on November 15, 2004, commenced an adversary proceeding against Helen-May for relief arising from Helen-May's alleged misrepresentation of the acreage. Helen May's attorney, David Carlebach, Esq., filed an answer, but in May, 2005, Carlebach was replaced by Gerald Orseck, Esq.

Orseck was more aggressive. In June 2005, he filed a motion for summary judgment in the adversary proceeding. In addition, he filed a motion to convert the chapter 11 case to chapter 7, or alternatively, for relief from the stay. Both sets of motions were returnable on June 28, 2005, and were vigorously opposed by the debtor. In addition, the Court scheduled a pre-trial conference in the adversary proceeding for the same day.

The parties, including Paul and Irene Griffin, Helen-May's principals,[1] attended the June 28th session. The Court treated the

---

[1] Irene is a member of Helen-May. Although Paul does not hold any office with Helen-May, he advises his wife on Helen-May matters, and has played an active role on Helen-May's behalf in these matters.

3

conversion motion to include a request for dismissal, and the request for stay relief to include a demand for adequate protection. Decision was reserved on the summary judgment motion, and an evidentiary hearing on Helen-May's motion to dismiss or convert, for adequate protection or for relief from the stay, was scheduled for July 20th. The Court also scheduled the debtor's motion for approval of its disclosure statement for July 20th. The Griffins were present in Court when the adjournments were announced and the adjourned date was selected.

Orseck appeared on July 20th, but without Paul or Irene Griffin. He and the debtor's counsel initially requested a chambers conference to explore the possibility of settlement. They were unable to reach an agreement during the conference, and returned to the courtroom to begin the hearing. Helen-May withdrew its motion to dismiss or convert due to insufficient notice to creditors, (Transcript of hearing, held July 20, 2005, at 4-5)(ECF Doc. # 54), and the Court proceeded to take evidence on two issues: (1) the amount of use and occupancy the debtor had to pay while in possession of the Property, and (2) the amount of the "cure" that the debtor would have to pay in the event that it assumed the Contract under its proposed plan. During the ensuing discussion about the contents of the order memorializing the day's rulings, the Court asked counsel if there was anything else. They

responded: "We may have a settlement."  (Id., at 53.)

**C.   The Settlement**

Following the lunch recess, counsel announced that the parties had agreed to settle for a purchase price of $1,725,000, less the $140,000 down payment, and plus or minus a few other closing adjustments.  (Id., at 54.)  At several points, I advised counsel, and Orseck acknowledged, that the settlement was binding without regard to any further memorialization:

> THE COURT:    This is a settlement on the record.
>
> MR. ORSECK:   Yes.
>
> THE COURT:    This is binding.
>
> MR. ORSECK:   Yes, of course.

(Id., at 55.)

After the parties explained how the tax adjustment worked, they confirmed their agreement to the settlement:

> THE COURT:     Right. Is that –
>
> MR. FRANKEL:[2] Yes.
>
> THE COURT:     – agreeable to the debtor and is that agreeable to the seller?
>
> MR. ORSECK:    Yes.
>
> THE COURT:     Okay.  The matter is deemed settled. I think you can do it in one of two ways.

---

[2]   Mark Frankel, Esq. represented the debtor.

5

> MR. FRANKEL:    Okay.
>
> THE COURT:    If you want me to retain jurisdiction then you should probably make a motion to assume the contract or stipulate to assume the contract, include the resolution.  I deem it still settled.  This is just a procedural issue.

(Id., at 56.)

The Court and counsel then explored the timing and procedure for approving the settlement.  Orseck was very anxious to consummate the deal as quickly as possible.  I suggested that the parties settle a stipulation on ten days notice that provided for the assumption of the Contract on the terms set forth on the record.  (Id., at 57.)  Orseck stated that he did not need ten days, and asked to shorten the time because his client was paying a premium mortgage interest rate.  (Id., at 58.)  The debtor's attorney speculated that he might be able to obtain the consent of all of the creditors, implying that approval could be obtained sooner than ten days.  (Id.)  I advised the parties to try to agree on a stipulation within the next two days, but repeated once again that "I consider it settled under these terms and what we're really talking about is the mechanics now."  (Id.)

**D.    Post-Settlement Events**

The debtor scheduled the presentment of the proposed order approving the settlement for August 12, 2005, and sent notice by

6

overnight mail to Helen-May and the creditors on August 4, 2005. (See ECF Doc. # 40.)  The debtor's notice elicited a surprising response from Orseck.  He objected to the proposed order on three grounds: (1) the case had not been settled, (2) the settlement failed to include several material elements, and (3) the settlement required the written approval of Helen May.  (Objections of Helen-May Holdings, LLC to Proposed "Order Approving Settlement", dated Aug. 11, 2005)("Objection") (ECF Doc. # 41.)

After the debtor filed a reply, I received a supplemental objection[3] from Helen-May, signed by its newly-retained and erstwhile counsel, Carlebach.  The Supplemental Objection included affidavits signed by Paul and Irene Griffin in which they swore that Orseck never had the authority to settle the dispute.[4] Furthermore, the Griffins had planned to attend the July 20th hearing, (Affidavit of Irene Griffin, sworn to Sept. 19, 2005, at ¶¶ 4-5)("Irene Affidavit"), but on July 19th, Orseck's secretary

---

[3]     See Supplemental Objection of Helen-May Holdings and in Response to the Debtor's Reply to Helen May's Objection to the Debtor's Proposed Order Approving Settlement, dated Sept 19, 2005 ("Supplemental Objection") (ECF Doc. # 43).

[4]     Orseck also submitted an affidavit in which he swore that although he held a good faith belief that he had actual authority to settle the case on July 20th, he was under a "mistaken impression."  After refreshing his recollection with the various communications from his client, he "realized that I never had authority to settle this case in any fashion."  (Affidavit of Gerald Orseck, sworn to Sept. 16, 2005, at ¶¶ 5-6) ("Orseck Affidavit.")  Orseck did not explain the basis of his "good faith" belief, or why the Objection, which he filed, did not assert that he lacked authority.

7

advised them (falsely) that the hearing was adjourned, and they should not come. (Id., ¶ 5.) Irene also heard Orseck's voice in the background telling his secretary to tell the Griffins that "the judge said there were too many witnesses and he needed to allocate more time." (Id.)

On July 20th, Orseck called the Griffins at 10:43 a.m. to advise them that he had spoken to Helen-May's business attorney, Dan Scher, Esq. He and Scher expected that the most Helen-May could expect to receive was between $300,000 and $400,000, probably referring to the amount in excess of the $1.4 million Contract price. (Id., ¶ 6.) Paul Griffin responded "absolutely not get the property back." (Id.) Orseck was in this Courthouse when he made the call, but did not tell the Griffins that he was calling from Court. (Id.)

Paul Griffin immediately called Orseck back at his office, but his secretary said Orseck was out. (Id., ¶ 7.) He then called Scher who denied the statements attributed to him by Orseck. (Id.)

The Griffins got wind of the settlement from Orseck's son, Kirk, the same day. (Id., ¶ 8.) Paul Griffin sent Orseck a fax on July 20th, expressing concern about what Kirk had said, and stated that he and his wife wanted the stay lifted and the Property back.

(<u>Irene Affidavit</u>, Ex. C.)

The Griffins met with Orseck on July 22nd. They discussed the rulings regarding the "cure" amount, but Orseck never told them that a hearing had taken place. (<u>Id.</u>, ¶ 10.) The Griffins learned about the hearing six days later, on July 28th, when they bumped into Helen-May's trial expert, Gene Barbanti, at a local restaurant. (<u>Id.</u>, ¶ 11.) The Griffins expressed shock. (<u>Id.</u>) By coincidence, Orseck and his wife walked into the same restaurant five minutes later, and Orseck asked the Griffins to come to his office the next morning. (<u>Id.</u>) When they arrived the next day, Orseck had already left and cancelled the meeting. (<u>Id.</u>)

On August 5th, the Griffins received the debtor's proposed order.[5] They were "mystified," (<u>id.</u>, ¶ 14), and Helen-May filed the <u>Objection</u> and the <u>Supplemental Objection</u> discussed earlier. The Court conducted a hearing, and at its suggestion, the debtor filed this motion to enforce the settlement on October 27, 2005. The Court has treated the matter, with the parties' consent, as a motion for summary judgment on the issue of whether Orseck had apparent authority to enter into the settlement. (<u>See</u> Transcript of hearing, held Nov. 22, 2005, at 11) ("11/22 Tr.") (ECF Doc. #

---

[5] The Griffins had spoken with Orseck on August 3, 2005 about getting the Property back. Orseck failed to mention the settlement. (<u>Irene Affidavit</u>, ¶ 12.)

9

53.)

The debtor's position, as amplified at the November 22, 2005 hearing, is based on two premises. First, a settlement on the record in open court creates or is supported by an "irrebuttable presumption" of apparent authority. (Id., at 6-7.) Second, Helen-May cloaked Orseck with apparent authority by knowingly permitting him to attend a conference conducted under Rule 16 of the Federal Rules of Civil Procedure. (Id., at 8-9.) While Helen-May agrees that a trial counsel who settles on the record in open court is "presumed" to have authority, it rebutted the presumption by showing that Orseck lacked actual authority. (Id., at 26-27.)

**DISCUSSION**

**A.    Introduction**

The decision to settle a case rests with the client. Pereira v. Sonia Holdings, Ltd. (In re Artha Mgmt., Inc.), 91 F.3d 326, 329 (2d Cir. 1996); United States v. International Bhd. of Teamsters, Chauffeurs, Warehousemen and Helpers of America, 986 F.2d 15, 19 (2d Cir. 1993)("Teamsters"); Fennell v. TLB Kent Co., 865 F.2d 498, 501 (2d Cir. 1989). An attorney can bind his client to a settlement only when the client has authorized him to so. An attorney may nevertheless enter into a binding settlement if he has apparent authority, and the opposing attorney has no reason to

10

doubt it. Teamsters, 986 F.2d at 19; Janneh v. GAF Corp., 887 F.2d 432, 436 (2d Cir. 1989). In a case arising under federal law, the scope of the agent's authority is determined under the federal common law, Artha Mgmt., 91 F.3d at 328; Teamsters, 986 F.2d at 20, but New York and federal law are essentially the same on this point. See Fennell, 865 F.2d at 501.

Because of the unique nature of the attorney-client relationship and the public policy favoring settlements, an attorney who enters into a settlement, particularly one on the record in open court, is presumed to have the actual authority to bind his client. Artha Mgmt., 91 F.3d at 329. "In accordance with that presumption, any party challenging an attorney's authority to settle a case under such circumstances bears the burden of proving by affirmative evidence that the attorney lacked authority." Id.; accord Teamsters, 986 F.2d at 20("The burden of proving that an attorney entered into a settlement agreement without authority is not insubstantial."); Conway v. Brooklyn Union Gas Co., 236 F. Supp. 2d 241, 247(E.D.N.Y. 2002)("[C]ourts will presume that an attorney who enters into a settlement agreement has authority to do so."); In re Cuffee, 232 B.R. 53, 56 (E.D.N.Y. 1999)("A stipulation of settlement on the record in Court is one of the strongest and most binding agreements in the field of law."); Hallock v. State, 474 N.E.2d 1178, 1180-81 (N.Y. 1984)(absent fraud, collusion,

mistake or accident, the client challenging an oral settlement made on the record must show that the attorney "was without authority of any sort to enter into the settlement, and therefore no contract ever came into being").[6]

The debtor argues that Orseck's agreement to settle on the record created an "irrebuttable" presumption that he had apparent authority, but no such "irrebuttable" presumption exists. Rather, the settlement creates a rebuttable presumption of actual authority. The debtor did not move for summary judgment on the issue of actual authority, and even if it had, the Griffins' denials of Orseck's authority raised a disputed issue of material fact. Accordingly, we turn to the question of apparent authority.

**B.   Apparent Authority**

Apparent authority consists of two elements: (1) a manifestation by the principal that the agent has authority and (2) reasonable reliance on that manifestation by the person dealing with the agent. See FDIC v. Providence College, 115 F.3d 135, 140 (2d Cir. 1997); Herbert Construction Co. v. Continental Ins. Co.,

---

[6]     Hallock referred to N.Y.C.P.L.R. 2104 (McKinney 1997 & Supp. 2005) which provides, in substance, that a settlement made on the record in open court is binding even if it is not reduced to writing and signed by the parties. Although there is some question whether this provision applies to oral stipulations governed by federal law, "the federal rule regarding oral stipulations does not differ significantly from the New York rule." Monaghan v. SZS 33 Assocs., L.P., 73 F.3d 1276, 1283 n.3 (2d Cir. 1996).

931 F.2d 989, 993-94 (2d Cir. 1991); RESTATEMENT (SECOND) OF AGENCY § 27 (1958).  Only the principal can manifest the attorney's authority; the attorney cannot create apparent authority by his manifestation alone.  Teamsters, 986 F.2d at 20.  Furthermore, apparent authority cannot be based on private communications between the lawyer and his client that are not disclosed to opposing counsel.  See Fennell, 865 F.2d at 502.

"[A] client does not create apparent authority for his attorney to settle a case merely by retaining the attorney."  Id.; accord Artha Mgmt., 91 F.3d at 329.  Accordingly, while the presumption that attends open court settlements is a powerful one, the cases require more to support a finding of apparent authority.  In addition to affirmative statements or acts by the principal directed at the third party, indicia of apparent authority include the attorney's unrefuted statements, made in his client's presence, that he has authority to settle, Conway, 236 F. Supp. 2d at 248; the attorney's participation in settlement discussions with the client's knowledge, Clark v. Bristol-Myers Squibb & Co., 761 N.Y.S.2d 640, 643 (N.Y. App. Div. 2003); see Teamsters, 986 F.2d at 20 (client allowed "unauthorized" attorney to negotiate modification to settlement); Alvarez v. City of New York, 146 F. Supp. 2d 327, 335 (S.D.N.Y. 2001)(client and attorney participated in two lengthy settlement conferences, without advising adversary

or court of limit on attorney's authority); the attorney's appearance at court conferences conducted pursuant to rules that require the attorney to have settlement authority, Hallock, 474 N.E.2d at 1182; Stoll v. Port Auth of New York and New Jersey, 701 N.Y.S.2d 430, 431 (N.Y. App. Div. 2000); Bauer v. Lygren, 493 N.Y.S.2d 815, 816 (N.Y. App. Div. 1985); Collazo v. New York City Health & Hosps. Corp., 477 N.Y.S.2d 662, 663 (N.Y. App. Div. 1984), and the client's delay in denying the attorney's authority. Teamsters, 986 F.2d at 20; Conway, 236 F. Supp. 2d at 248; Clark v. Bristol-Myers Squibb & Co., 761 N.Y.S.2d at 643.

Here, the record does not support summary judgment on the issue of apparent authority.  Aside from Helen-May's retention of Orseck – which is not enough – the debtor has not shown as a matter of law that Helen-May made any express or implied manifestations regarding Orseck's authority to settle.  The debtor relies heavily on Orseck's appearance at the pre-trial conference on June 28th and at the settlement conference on July 20th.  The Court did not, however, announce that settlement would be discussed, did not discuss settlement with the parties, and did not require the presence or availability of someone with authority to discuss settlement on June 28th.  See FED. R. CIV. P. 16(c)(At a pre-trial conference, "the court may require that a party or its representative be present or reasonably available by telephone in

14

order to consider possible settlement of the dispute.")

Similarly, a settlement conference was not on the July 20th agenda. Instead, Orseck and the debtor's counsel requested one after they arrived. Orseck appeared alone on July 20th, after allegedly duping the Griffins into believing that the Court hearing had been adjourned. Consequently, the settlement conference on July 20th said nothing more about Orseck's authority than if he had represented his own authority to settle.

To be sure, the record raises several unresolved questions. First, Orseck attested to a good faith but mistaken belief in his authority to settle. (See Orseck Affidavit, ¶¶ 5-6.) The undisclosed basis of that belief might be relevant to the issue of his authority.

Second, the Griffins arguably authorized Orseck to engage in settlement negotiations. Paul Griffin's July 18th fax, (Irene Affidavit, Ex. B), gave Orseck certain marching orders. He told Orseck that he "wanted to make sure that we are on the same page regarding any potential pre-trial settlement." Orseck was informed that the debtor's principal, Jack Lefkowitz (or his assignee), would have to be responsible for any real estate commissions and transfer taxes. Finally, Mr. Griffin advised Orseck regarding what

15

Helen-May would accept: "[i]t makes no sense for us to settle for anything less than $4,150,000.00." Thus, Helen-May recognized that Orseck might engage in settlement negotiations, implicitly authorized him to do so, and merely placed a limit on what he could accept. While Helen-May points to a June 3, 2005 letter, (<u>Irene Affidavit</u>, Ex. A), in which Orseck told his adversary that Helen-May adamantly refused to do any business with the debtor, the later June 28th fax confirmed that Helen-May was prepared to engage in settlement discussions.[7]

Third, Orseck actually engaged in negotiations with the debtor's counsel before and after the fax, possibly with the Griffins' knowledge. Between May 23, 2005 and June 3, 2005, Orseck and Scott Krinsky, Esq., the debtor's counsel, discussed settlement. (<u>Affidavit [of Scott Krinsky] in Support of Motion</u>, sworn to Oct. 27, 2005, at ¶ 8)("<u>Krinsky Affidavit</u>")(ECF Doc. # 44.)  Discussions broke off in early June, but resumed in July. (<u>Id.</u>, ¶ 14.)  The Griffins never denied knowledge of these discussions.

Fourth, Helen-May was remarkably slow to disavow the settlement and Orseck. By their own admission, the Griffins heard about the settlement from Orseck's son on July 20th, the day it

---

[7] Orseck's subsequent participation in settlement negotiations strongly suggests that the adamant tone of the June 3rd letter was just posturing.

occurred. That same day, they discovered that Orseck had lied about a conversation with Dan Scher, Esq, regarding what Helen-May could expect to receive. On July 28th, they learned from Gene Barbanti, Helen-May's trial expert, that Orseck had also lied to them about the July 20th adjournment.

Despite the lies and the unauthorized settlement, the Griffins continued to use Orseck as Helen-May's attorney.[8] Orseck filed Helen-May's Objection, dated August 11, 2005. Notably, the Objection did not state that Orseck lacked authority. In addition, Orseck tried, through the middle of September, to schedule further settlement meetings with the debtor's lawyers. (Krinsky Affidavit, ¶ 24.) It was not until Helen-May retained Mr. Carlebach, and he filed the Supplemental Objection 60 days after the discovery of the unauthorized settlement and Orseck's lies, that lack of authority was raised.

Nevertheless, the present record is too thin to grant the motion as a matter of law. Accordingly, the parties are directed to appear for an evidentiary hearing on January 25, 2006, at 10:00

---

[8] The Griffins claim they were mystified when they received the proposed order in early August, because they "had been repeatedly told by Mr. Orseck that the case was not settled." (Irene Affidavit, ¶ 14.) Irene's affidavit does not relate a single instance, much less repeated instances, in which Orseck told the Griffins that the "case was not settled." Rather, in recounting the chronology, she stated that Orseck gave them "the impression" that it was not settled. (Id., ¶ 12.)

a.m., to resolve the questions of Orseck's actual and apparent authority.

So ordered.

Dated:   New York, New York
         December 15, 2005

                                /s/ *Stuart M. Bernstein*
                                STUART M. BERNSTEIN
                 Chief United States Bankruptcy Judge