```
UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
In re:                                           :
                                                 :
KOLLEL MATEH EFRAIM, LLC, a/k/a                  :  Chapter 7
MATEH EPHRAIM LLC, a/k/a                         :  Case No. 04-16410 (SMB)
KOLEL MATEH EFRAIM,                              :
                                                 :
                    Debtor                       :
---------------------------------------------------------------X
ROBERT L. GELTZER, as Chapter 7 Trustee of       :
the Estate of the Debtor KOLLEL MATEH            :
EFRAIM, LLC, a/ka/ MATEH EPHRAIM LLC,            :
a/ka, KOLEL MATEH EFRAIM                         :
                                                 :
                    Plaintiff,                   :
                                                 :
       -- against --                             :  Adv. Proc. No. 04-4545
                                                 :
HELEN-MAY HOLDINGS LLC, and                      :
IRENE GRIFFIN                                    :
                                                 :
                    Defendants.                  :
---------------------------------------------------------------X
ROBERT L. GELTZER, as Chapter 7 Trustee of       :
the Estate of the Debtor KOLLEL MATEH            :
EFRAIM, LLC, a/ka/ MATEH EPHRAIM LLC,            :
a/ka, KOLEL MATEH EFRAIM                         :
                                                 :
                    Plaintiff,                   :
                                                 :
       -- against --                             :  Adv. Proc. No. 08-1265
                                                 :
JACK LEFKOWITZ, and                              :
ABRAHAM STEINWURZEL                              :
                                                 :
                    Defendants.                  :
---------------------------------------------------------------X
```

**MEMORANDUM DECISION ORDERING AN EVIDENTIARY
HEARING TO DETERMINE ADMINISTRATIVE CLAIM AND CONSOLIDATING
ISSUE WITH TRIAL IN RELATED ADVERSARY PROCEEDING**

**A P P E A R A N C E S:**

BACKENROTH FRANKEL & KRINSKY, LLP
Attorneys for Debtor
489 Fifth Avenue
New York, New York 10017

    Scott Krinsky, Esq.
        Of Counsel

SQUIRE, SANDERS & DEMPSEY L.L.P.
Attorneys for Robert L. Geltzer, Trustee
30 Rockefeller Plaza
23rd Floor
New York, New York 10036

    Robert A. Wolf, Esq.
        Of Counsel

LAW OFFICES OF DAVID CARLEBACH, ESQ.
Attorneys for Helen-May Holdings LLC
40 Exchange Place
New York, New York 10005

    David Carlebach, Esq.
        Of Counsel

HELLER, HOROWITZ & FEIT, P.C.
Attorneys for Jack Lefkowitz and
  Abraham Steinwurzel
292 Madison Avenue
New York, New York 10017

    Stuart A. Blander, Esq.
        Of Counsel

**STUART M. BERNSTEIN**
**Chief United States Bankruptcy Judge:**

       The plaintiff and defendants reached a settlement in this adversary proceeding that the Court approved. Among other things, the settlement fixed the amount of the administrative claim for use and occupancy held by the defendant, Helen-May Holdings, LLC ("Helen-May"), without prejudice to the right of other parties in interest to object. Backenroth Frankel &

2

Krinsky, LLP ("BFK"), former counsel to the debtor-in-possession, and Jack Lefkowitz and Abraham Steinwurzel, defendants in an adversary proceeding entitled <u>Geltzer v. Lefkowitz, et al.</u>, Adv. Proc. No. 08-1265 (the "Fiduciary Litigation"), objected on various grounds.

The objections raise a threshold question; did I already decide the amount of Helen-May's use and occupancy claim in connection with the resolution of another dispute? The record is confused, as evidenced by the fact that each adverse party contends that I already decided the issue in that party's favor. For the reasons that follow, I conclude that the issue remains unresolved, and further proceedings are needed to decide it. In addition, the amount of Helen-May's administrative claim affects the plaintiff-trustee's potential damages in the Fiduciary Litigation. Accordingly, the common issue will be consolidated for trial.

## BACKGROUND

On April 29, 2004, Helen-May executed a contract of sale (the "Contract") with Aron Fixler to sell certain real property (the "Property") in Sullivan County, New York for $1,400,000. (<u>Motion for Relief from Stay and Related Relief</u>, dated Nov. 5, 2004 ("<u>First Motion</u>"), at Ex. A (ECF Doc. # 8.)[1] Fixler assigned the Contract to the debtor. The Contract was scheduled to close on June 1, 2004.

The parties did not close on the scheduled date, and instead, entered into a letter agreement, dated June 3, 2004 (the "Occupancy Agreement"). (<u>First Motion</u>, at Ex. H.) In relevant part, the Occupancy Agreement extended the closing date until September 27, 2004, and granted the debtor the express right to occupy and operate the Property in the interim. In consideration for the extension and occupancy rights, the debtor agreed to pay numerous

---

[1] Unless indicated otherwise, citations to the docket refer to the docket of the main bankruptcy case, No. 04-16410.

3

monthly operating and other expenses.  In addition, the Occupancy Agreement imposed a monetary obligation (the "Daily Penalty") on the debtor if it failed to close by the new date:

> In the event that the Purchaser fails to close on or before September 27, 2004, for each day the [Purchaser] continue[s] to occupy the premises they [sic] shall become liable to the Seller for the additional sum of $1,500.00 which will continue to accrue until they [sic] quit the premises and remove all of their [sic] belongings.

(Occupancy Agreement, at 3.)

The parties did not close by September 27, 2004.  Instead, they entered into a second agreement that extended the closing date to November 29, 2004 (the "Second Extension Agreement").  (First Motion, at Ex. E.)  The Second Extension Agreement required the debtor to make two lump sum payments aggregating approximately $41,000.  All other relevant provisions of the Occupancy Agreement remained in full force and effect.

The debtor filed its chapter 11 petition on October 4, 2004, and the case was assigned to former Bankruptcy Judge Blackshear.  On November 7, 2004, Helen-May sought alternative forms of relief, including relief from the automatic stay and the payment of post-petition expenses pursuant to 11 U.S.C. §§ 365(d)(3), 503(b) and 105.  (First Motion.)  Helen-May argued that the debtor had failed to pay the post-petition expenses under the Occupancy Agreement, including the Daily Penalty.  (Id., at ¶¶ 39-40.)  It sought an order compelling the debtor to pay the unpaid post-petition expenses under its general equitable power or as "adequate protection."  (Id., at ¶ 75.)

After hearing the motion, Judge Blackshear apparently denied all relief except to the extent of issuing an oral direction to the debtor to pay $5,000 per month.  There is no transcript of this hearing, and no means to determine the basis of the Court's decision.

4

On June 12, 2005, Helen-May, represented by a new attorney, Gerald Orseck, Esq., moved to convert or dismiss the debtor's bankruptcy case, or in the alternative, to increase the $5,000 monthly payment ordered by Judge Blackshear. (<u>Interested Party Helen-May Holdings, LLC's Memorandum of Law in Support of Motion to Dismiss or Convert, to Vacate Automatic Stay, and for Other Relief</u>, dated June 12, 2005 ("Second Motion"))(ECF Doc. # 25.) The Second Motion did not use the phrase "adequate protection." Instead, it referred to the $5,000 monthly payment as "use and occupancy," and argued that "[t]he sum of $5,000 is woefully inadequate so as to reflect the current fair market rate on the value of the use of Helen-May's property." (<u>Id.</u>, at 7.) Helen-May asked the Court to terminate the debtor's possession of the Property, or increase "use and occupancy to $12,000 per month." (<u>Id.</u>) The Second Motion did not mention the Daily Penalty.

The Second Motion was originally scheduled to be heard on June 28, 2005. A companion motion for summary judgment filed by Helen-May in a related adversary proceeding was also returnable at the same time. By then, Judge Blackshear had retired, and I assumed responsibility for the case. After hearing oral argument, the motion to dismiss was adjourned to July 20, 2005. The Court also scheduled a hearing for that same date on the debtor's motion to approve its disclosure statement and confirm its plan.

### A.    The July 2005 Hearing

The proceedings that occurred on July 20, 2005 are the source of the confusion. To appreciate why, it is necessary to view those proceedings, in real time, as two separate proceedings. At the outset, the Court declined to consider the motion to dismiss the case because Helen-May had failed to effect proper service. (<u>Transcript of Hearing Re Motion to Dismiss or Convert for Adequate Protection or Relief from the Stay</u>, held July 20, 2005 ("Tr. (7/20)"), at 4-

5

5)(ECF Doc. # 54.) I advised the parties that I would proceed with the alternative motion for "adequate protection" – a motion Helen-May had not actually made. (See id., at 5.)

### 1. Part I

No one took issue with the reference to adequate protection, and the parties apparently ignored it; they tried the use and occupancy claim teed up by the Second Motion. Helen-May called Gene Barbanti, a real estate broker and consultant.[2] The substance of his testimony was that the reasonable rental value of the Property was directly related to the expected return on the investment of $1.4 million, the value he ascribed to the Property based on the Contract price. Barbanti opined that an investor would expect at least a 10% return on his money, and concluded that the reasonable annual rental was $140,000. (Id., at 9-10.) In addition, the 10% return would represent profit after the payment of taxes. (Id., at 10.) In other words, the tenant would also have to pay those sums each month.

The debtor did not cross-examine Barbanti, and neither party called any other witnesses. (Id., at 10-11.) The debtor's counsel implied that Helen-May had failed to prove its use and occupancy claim because it did not offer evidence of rentals in the area, and he had "heard" that the rentals were not directly proportional to the carrying costs and interest. (Id., at 12.) I responded that I had not heard or received any other evidence, and asked the debtor's counsel whether he wanted to reopen the record, an offer he declined. (Id.) I concluded, based on Barbanti's testimony, that the reasonable monthly value of the Property was $140,000 divided by 12, or $11,667, plus the real estate taxes. I directed the debtor to make those monthly payments

---

[2] The debtor's attorney did not object to his expert qualifications to testify regarding the fair rental value of the Property. (Tr. (7/20), at 8.)

6

as "adequate protection" on a going forward basis, (id., at 12-13), and told counsel to settle an order. (Id., at 13.)

### 2. Part II

The hearing then turned to the debtor's plan and disclosure statement. The debtor intended to assume the Contract by paying the Contract price (less the deposits), and contended that this left Helen-May unimpaired and not entitled to vote. Helen-May disagreed, insisting that it was still impaired because the debtor owed an additional $1,500 per day "penalty," or roughly $400,000, based on the failure to close and vacate the Property by September 27, 2004. (Id., at 14-15.) This was the first I had heard of the Daily Penalty or the Occupancy Agreement. (See id., at 16-17.) The debtor responded that it did not have to pay the Daily Penalty if it eventually closed, even if it closed after September 27, 2004. (See id., at 15-16.)

The resolution of this issue was critical. If Helen-May was impaired and entitled to vote, the debtor could not confirm its plan unless Helen-May affirmatively voted to accept it – an unlikely scenario. (See id., at 17.) The parties agreed that the Court should immediately determine which interpretation was correct. (Id., at 18.)

After reviewing the Occupancy Agreement and the Second Extension Agreement, the Court initially concluded that they were ambiguous, mainly because it was unclear whether the Second Extension Letter delayed the imposition of the Daily Penalty for two months until the new closing date, November 29, 2004, had passed. (Id., at 26.) The debtor then called Jack Lefkowitz, its managing member, to testify. While his testimony clarified the meaning of the two letter agreements, it begat the present controversy. Lefkowitz testified that the $1,500 was selected as the Daily Penalty because the debtor would no longer be paying rent, and that amount

7

matched the aggregate of the rent, insurance, utilities and maintenance – $45,000 per month – that the debtor had been paying under the Occupancy Agreement. (<u>Id.</u>, at 32-33.) No other witnesses testified, and no additional evidence was offered.

The Court concluded that under the Occupancy Agreement, the debtor was no longer required to pay rent, and instead, was required to pay $1,500 per day after September 27, 2004, for each day that it remained in possession without closing. (<u>Id.</u>, at 34-35.) In addition, it also had to pay the two lump sum payments, aggregating $40,500, required under the Second Extension Agreement, if the debtor did not close by November 29, 2004, which it had not done. (<u>Id.</u> at 36.)

I also expressed surprise that the Occupancy Agreement and the Daily Penalty had not been raised during the hearing to fix the reasonable rental value. (<u>Id.</u>) The debtor's counsel explained that Helen-May had argued before Judge Blackshear that the debtor should pay $1,500 per day, and Judge Blackshear fixed the amount at $5,000 per month. (<u>Id.</u>, at 36-37.)

I declined to revisit the "adequate protection" order because Helen-May got all of the relief that it asked for in the Second Motion. (<u>Id.</u>, at 37.) Nevertheless, Helen-May was entitled to $1,500 per day (less any payments made) after September 27, 2004 under the Occupancy Agreement, and that was what the debtor would have to pay to assume the Contract and leave Helen-May unimpaired. (<u>Id.</u>, at 37, 50, 51.) The debtor argued at that point that Helen-May was barred under Judge Blackshear's prior ruling from recovering more than $5,000 per month. (<u>Id.</u>, at 37-38.) I directed the debtor to commence paying the "adequate protection" that I had ordered, but allowed the debtor to brief the potential preclusive effect of Judge Blackshear's order. (<u>Id.</u>, at 39.) After further colloquy and reflection, I also determined to appoint a mediator

8

to see if he or she, working with the parties, could come up with a number that would allow the sale to be consummated. (Id., at 49-50.) After discussing the submission of orders, the Court recessed for lunch.

Following the lunch break, the parties announced a settlement on the record. The terms of the settlement are not germane. However, as a result of the settlement, the parties never submitted the proposed orders decreeing the relief that had been granted.

**B.     The Aftermath**

Within a few weeks of the July 2005 hearing, Helen-May repudiated the settlement, contending that Orseck was not authorized to make it. (Opinion and Order Denying Motion for Summary Judgment, dated Dec. 15, 2005)(ECF Doc. # 55.) It also rehired the lawyer that Orseck had replaced, David Carlebach, Esq. Eighteen months of litigation over the settlement followed. In the interim, the Court ordered the debtor to make insurance payments of $2,333 per month and real estate tax payments of $1,876 per month, commencing on a prorated basis from November 9, 2005. (See Order, dated March 28, 2006)(ECF Doc. # 69.) In addition, the Court ordered the debtor to continue to pay the electric bill, the telephone bill and the fuel oil in a timely fashion to the appropriate utilities for as long as it remained in possession of the Property. (See id.)

The settlement litigation culminated in a post-trial decision that Orseck lacked authority. (Post-Trial Findings of Fact and Conclusions of Law, dated Feb. 23, 2007)(ECF Doc. # 96.) Hence, there was no settlement, and the parties were returned to the July 2005 status quo. Upon Helen-May's motion, the Court ordered the debtor to commence paying monthly adequate protection in the amount of $13,553 and to tender the unpaid net balance in the sum of $210,120

9

that had accrued since July 2005 within 30 days.  (Order, dated Apr. 25, 2007)(ECF Doc. # 119.)  The debtor made only one payment, and failed to pay the balance.  As a result, the Court entered a judgment, dated August 10, 2007, in the amount of $245,779.  (See Order & Judgment, dated Aug. 10, 2007 ("Judgment"))(ECF Doc. # 186.)

### C. The First Settlement Between Helen-May and the Trustee

On October 25, 2007, the Court converted the chapter 11 case to case under chapter 7, and Robert L. Geltzer, Esq. was appointed the chapter 7 trustee (the "Trustee").  By then, the Court had granted Helen-May relief from the automatic stay to evict the debtor from the Property, and Helen-May had commenced an eviction proceeding in Sullivan County.  On November 20, 2007, the Trustee and Helen-May entered into a stipulation pursuant to which the Trustee consented to the eviction of the debtor from the Property.

The Trustee and Helen-May eventually reached a settlement on the record of the litigation involving the estate's interest in the Contract (the "First Settlement").  (Transcript of Settlement, held Apr. 17, 2008)(Adv. Pro. No. 04-4545, ECF Doc. # 58.)  Helen-May agreed to sell the Property, and share the net proceeds in accordance with the formula set forth in their agreement.  (Id., at 12-13.)  The Trustee agreed that Helen-May would have an administrative claim inclusive of the Judgment in the amount of $1,500 per day multiplied by the number of days that the debtor had occupied the Property after the closing date (September 28, 2004 through October 29, 2007), or roughly $1,642,500, but reduced by the aggregate amount collected by Helen-May pursuant to the Judgment.  Helen-May subordinated its judgment lien to the chapter 7 administrative expenses.  The Trustee would reject the Contract, Helen-May waived any rejection damage claim, and the parties agreed to exchange mutual releases of all other claims not covered by the settlement.  (Id., at 13-14.)   Helen-May had the option to

10

consummate the settlement if a party in interest objected to the administrative claim. (Id., at 13.) The settlement was contingent on a closing of the sale of the Property by August 31, 2008. (Id., at 14.)

BFK, a chapter 11 administrative creditor, objected to the First Settlement. It raised several arguments, but only two related points merit discussion. BFK contended that the Court had never determined that Helen-May was entitled either to an administrative claim or to $1,500 per day under the Occupancy Agreement. In addition, the Daily Penalty should be treated as a general unsecured claim because it arose under the rejected Occupancy Agreement. (Objection by Backenroth Frankel & Krinsky, LLP to the Trustee's Motion to Approve Its Settlement with Helen-May Holdings, LLC, dated May 5, 2008, at ¶¶ 37-40)(Adv. Proc. No. 04-4545, ECF Doc. # 60.)

The Court approved a modified First Settlement on May 22, 2008. (Order Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure Approving Settlement between the Trustee and Helen-May Holdings, LLC, dated May 22, 2008)(Adv. Pro. No. 04-4545, ECF Doc. # 62.) The modifications reserved two issues for future determination: the amount of Helen-May's administrative claim and whether Helen-May's claim based on the "Use & Occupancy Judgment" was a secured claim. (Id., at 2-3.) The parties subsequently extended the deadline for closing the sale of the Property to December 31, 2008. (Stipulation and Order Extending Duration of Settlement Agreement between Trustee and Helen-May Holdings, LLC, dated Oct. 22, 2008)(Adv. Pro. No. 04-4545, ECF Doc. # 65.)

11

**D.      The Second Settlement Between Helen-May and the Trustee**

Helen-May was unable to sell the Property by the December 31, 2008 deadline, and the First Settlement, as modified, lapsed by its own terms. Shortly thereafter, the Trustee sold two parcels of the estate's own real property located in Sullivan County for a gross sale price of $175,000. On February 19, 2009, Helen-May, now a chapter 11 debtor, and the Trustee entered into a second settlement (the "Second Settlement"). (See Stipulation and [Proposed] Order Amending Settlement Between Trustee and Helen-May Holdings, LLC, dated Feb. 19, 2009)(Adv. Pro. No. 04-4545, ECF Doc. # 66.) Under its terms, the Trustee agreed to pay Helen-May $30,000 from the proceeds of the sale of the parcels in partial satisfaction of the Judgment. (Id., at ¶ 1.) Helen-May agreed to subordinate the unpaid balance of the Judgment – $215,779 – to the payment of chapter 7 administrative claims, up to the remaining sale proceeds and the first $60,000 of additional monies collected by the estate. (Id., at ¶ 2(a).) Except for the express subordination, the balance of the unpaid Judgment would have priority over all other chapter 7 and chapter 11 administrative claims. (Id., at ¶ 2(b)-(c).)

The Second Settlement also granted Helen-May an allowed chapter 11 administrative claim in the difference between the aggregate amount of the accrued Daily Penalty and the amount collected by Helen-May pursuant to the Judgment. (Id., at ¶ 3.) While the Second Settlement incorporated the provisions of the First Settlement, as modified, regarding the division of the proceeds following a sale of the Property, the Second Settlement was not contingent on any sale. (Id., at ¶¶ 5-6.) Except as modified, the terms of the First Settlement, as modified, remained in full force and effect. (Id., at ¶ 7.)

BFK filed another objection. (Objection by Backenroth Frankel & Krinsky, LLP to the Trustee's Notice of Presentment of a Stipulation and Order Substantially Modifying Its

12

Settlement with Helen-May Holdings, LLC, dated Feb. 25, 2009 ("BFK Objection"))(Adv. Pro. No. 04-4545, ECF Doc. # 68); see also Backenroth Frankel & Krinsky, LLP's Supplemental Objection to the Trustee's Notice of Presentment (AdvDoc No. 66), dated Mar. 3, 2009)(Adv. Pro. No. 04-4545, ECF Doc. # 72).) Among other things, BFK contended that it had the right under the First Settlement, as modified, to litigate the amount of Helen-May's administrative claim and the extent of its alleged secured claim. BFK also repeated its earlier arguments that the Court never ruled that Helen-May accrued an administrative claim at the rate of $1,500 per day, or any other amount, under the Occupancy Agreement. (BFK Objection, at ¶ 50.) In addition, any claim based on the terms of the rejected Occupancy Agreement should be relegated to the status of a general unsecured claim. (Id., at ¶ 51.)

The Court approved a modified version of the Second Settlement on March 19, 2009. (Stipulation and Order Modifying Settlement Between Trustee and Helen-May Holdings, LLC, dated Mar. 19, 2009)(Adv. Pro. No. 04-4545, ECF Doc. # 75.) The Second Settlement, as modified, essentially recognized Helen-May's judgment lien in the net proceeds, totaling $132,812.38, from the sale of the estate's parcels. The Trustee paid Helen-May $30,000 on account of the Judgment, (id., at ¶ 1), and Helen-May subordinated the balance of its Judgment claim to the remaining sale proceeds ($102,812.38) and the first $60,000 of other funds collected by the Trustee to the payment of allowed chapter 7 administrative claims. (Id., at ¶ 2(a).) Otherwise, its claim in the sum of $102,812.38 would be superior to all other chapter 11 and chapter 7 administrative claims.[3] (Id., at ¶ 2(b).)

---

[3]   In substance, Helen-May was taking its full distribution from the sale, loaning back $102,812.38 to the estate, and accepting a partially subordinated chapter 7 priority claim, less than the superpriority it would be entitled to under 11 U.S.C. § 364(c).

13

In addition, the Second Settlement, as modified, granted Helen-May an allowed administrative claim in the difference between the aggregate Daily Penalty that accrued between the commencement of the chapter 11 case and the debtor's eviction and the amount collected by Helen-May under the Second Stipulation, as modified. The ultimate allowance of the administrative claim was subject, however, to the objection already lodged by BFK, and any objection filed by other parties in interest no later than April 3, 2009. (Id., at ¶¶ 3-4.) Finally, the Second Stipulation, as modified, reaffirmed the distribution of the proceeds of any future sale of the Property provided the sale closed by June 30, 2009, (id., at ¶ 5), and terms of the First Settlement, as modified, otherwise remained in full force and effect. (Id., at ¶ 7.)

Lefkowitz and Steinwurzel, the defendants in the Fiduciary Litigation, filed a timely objection. (Objections to Settlement, dated Apr. 1, 2009)(Adv. Pro. No. 04-4545, ECF Doc. # 76.) They argued that the Daily Penalty was an unenforceable penalty. (Id., at ¶¶ 4-5.) In addition, BFK filed yet another objection that largely repeated its earlier objections. (Objection by Backenroth Frankel & Krinsky, LLP to Awarding Helen-May Holdings, LLC an Administrative Claim, dated Apr. 3, 2009)(Adv. Pro. No. 04-4545, ECF Doc. # 77.)

The Court conducted a hearing on May 7, 2009. (See Transcript of Hearing, held May 7, 2009)(ECF Doc. # 271.) The argument revolved around the inconsistency that arose out of the July 2005 hearing. Regardless of whether the parties and the Court called the award "use and occupancy" or "adequate protection," Helen-May sought to compel the debtor to pay the reasonable rental value of the Property. Based upon the evidence, the Court accepted Helen-May's position, and determined that the reasonable monthly rental value was $11,667 plus taxes. On the other hand, the Court also determined during the second part of the hearing that the Occupancy Agreement obligated the debtor to pay $1,500 per day from September 28, 2004 until

14

the parties closed or the debtor vacated, and Lefkowitz testified that the Daily Penalty matched the amount the debtor was paying as use and occupancy. The Court invited submissions on whether the determination made regarding the reasonable rental value during Part I of the July 2005 hearing, followed by the Judgment and its partial satisfaction, judicially estopped Helen-May from now arguing that the use and occupancy was anything more than that amount.

## DISCUSSION

Section 503(b)(1) of the Bankruptcy Code grants administrative expense status to the claim of an entity that provides goods or services to the estate to the extent of "the actual necessary costs and expenses of preserving the estate."[4] The party asserting the status of an administrative claimant under 11 U.S.C. § 503(b)(1) has the burden of proving that its claim arose from a transaction with the debtor or on account of consideration furnished to the debtor, and that the transaction or consideration directly benefited the debtor. In re Patient Educ. Media, Inc., 221 B.R. 97, 101 (Bankr. S.D.N.Y. 1998). The "benefit test" is an objective one; if the debtor uses another's property after the petition date, the measure of the administrative claim is the reasonable rental value of the property. Id. at 104. "The contract rate is presumed to set the reasonable value, but either party may offer evidence to prove a different reasonable value." Id.; accord NLRB v. Bildisco & Bildisco, 465 U.S. 513, 531 (1984)("If the debtor-in-possession elects to continue to receive benefits from the other party to an executory contract pending a decision to reject or assume the contract, the debtor-in-possession is obligated to pay for the reasonable value of those services, . . . which, depending on the circumstances of a particular contract, may be what is specified in the contract.")(citations omitted).

---

[4] This case was commenced prior to the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, and accordingly, the Bankruptcy Code in effect on the commencement date governs.

15

Helen-May is entitled to an administrative claim in some amount based upon the debtor's use and occupation of the Property.[5] See In re DVI, Inc., 308 B.R. 703, 708 (Bankr. D. Del. 2004) ("If a lessee continues to use premises post-rejection, then a benefit has been conferred upon the estate which constitutes an administrative expense under section 503(b)."); cf. Eighteen Assocs., LLC v. Nanjim Leasing Corp., 683 N.Y.S. 2d 291, 292 (N.Y. App. Div. 1999) ("The obligation to pay for use and occupancy does not arise from an underlying contract between the landlord and the occupant. . . . Rather, an occupant's duty to pay the landlord for its use and occupancy of the premises is predicated upon the theory of quantum meruit, and is 'imposed by law for the purpose of bringing about justice without reference to the intention of the parties.'") (interpreting New York law) (citations omitted). Helen-May and the Trustee contend that the Daily Penalty in the Occupancy Agreement, amplified by Lefkowitz's earlier testimony, fixes the reasonable value of that use. BFK, Lefkowitz and Steinwurzel disagree.

Helen-May is plainly not entitled to $1,500 per day merely because the Occupancy Agreement says so or because Lefkowitz testified during Part II of the July 2005 hearing that $1,500 per day was purposely selected to approximate the rent under the Occupancy Agreement. Although Helen-May has analogized its rights to those of a non-debtor landlord under a non-residential real property lease, and argues that 11 U.S.C.§ 365(d)(3) should, therefore, apply by analogy, it does not contend that § 365(d)(3) applies. (See Supplemental Response of Helen May Holdings, LLC to the Objection of Backenroth Frankel & Krinsky, L.P. to Paragraph 3 of the Stipulation and Order Modifying Settlement Between Trustee and Helen-May Holdings, LLC, So Ordered on March 19, 2009, dated May 18, 2009, at ¶ 6 (Adv. Pro. No. 04-4545, ECF

---

[5] The discussion that follows is without prejudice to Helen-May's rights, if any, to assert an administrative claim under 11 U.S.C. § 507(b), and the right of any party in interest to oppose that claim.

16

Doc. # 84); Defendants' Memorandum of Law in Support of Defendants' Motion for Summary Judgment, dated Aug. 3, 2007, at ¶¶ 81, 86 (Adv. Pro. No. 04-4545, ECF Doc. # 27); Transcript of Motions, held Nov. 22, 2005, at 42:23-43:10 (ECF Doc. # 53); First Motion, at ¶¶ 69-75.) Hence, its administrative claim must satisfy § 503(b)(1).

Furthermore, Lefkowitz's testimony and the Court's rulings during Part II related to the amount that the debtor would have to pay Helen-May to leave it unimpaired and assume the Contract. The debtor never confirmed a plan or assumed the Occupancy Agreement, and the case thereafter converted to chapter 7. Any claims arising under the rejected, or "deemed rejected," Occupancy Agreement are relegated to the status of general unsecured claims, see 11 U.S.C. § 365(g),[6] and Helen-May waived its rejection damage claim under the First and Second Settlements, as modified.[7] In short, although the reasonable rental value of the Property may ultimately turn out to be the $1,500 that Helen-May seeks, neither the Occupancy Agreement nor Lefkowitz's testimony forecloses further inquiry into the reasonable rental value of the Property.

Instead, the question is whether further inquiry into the reasonable rental value should be foreclosed based on the Court's determination made during Part I of the July 2005 hearing. Regardless of whether the parties and Court referred to the relief sought in the Second Motion as "adequate protection" or "use and occupancy," Helen-May requested, the parties tried and the Court granted an award based on the reasonable rental value of the Property. The Court's award was subsequently incorporated in the Judgment that has been partially satisfied. Although the

---

[6] At one point, Helen-May had argued that the Occupancy Agreement was not an executory contract that could be rejected. If correct, any claim arising under the Occupancy Agreement would still be general and unsecured. See Riverwood Int'l Corp. v. Olin Corp. (In re Manville Forest Prods. Corp.), 225 B.R. 862, 865 (Bankr. S.D.N.Y. 1998), aff'd, 209 F.3d 125 (2d Cir. 2000).

[7] This conclusion makes it unnecessary to address the separate argument that the Daily Penalty is an unenforceable penalty. In any event, Helen-May's administrative claim cannot exceed the reasonable rental value of the Property.

17

Court suggested that judicial estoppel might apply, the question involves "law of the case" since judicial estoppel does not apply where the inconsistencies occur within the same proceeding. OSRecovery, Inc. v. One Groupe Int'l, Inc., 462 F.3d 87, 93 n.3 (2d Cir. 2006); Adler v. Pataki, 185 F.3d 35, 41 n.3 (2d Cir. 1999).

Under the doctrine of law of the case, a court may not address issues that have been litigated and decided in earlier proceedings in the same case. The doctrine is "based upon sound policy that when an issue is once litigated and decided, that should be the end of the matter." United States v. United States Smelting Refining & Mining Co., 339 U.S. 186, 198 (1950). Thus, a court will not ordinarily reconsider its own prior decisions, although it retains the discretion to do so. 18 CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE & PROCEDURE § 4478, at 789-92 (2d ed. 1981); Liona Corp., Inc. v. PCH Assocs. (In re PCH Assocs.), 949 F.2d 585, 592 (2d Cir. 1991).

"A court may revisit the law of the case where new evidence has surfaced or a more complete record has developed." Washington Nat'l Life Ins. Co. of New York v. Morgan Stanley & Co. Inc., 974 F. Supp. 214, 219 (S.D.N.Y. 1997); accord Harris v. Key Bank N.A., 193 F. Supp. 2d 707, 711-12 (W.D.N.Y. 2002), aff'd, 51 Fed. Appx. 346 (2d Cir. 2002). Although the Court determined the reasonable rental value of the Property in response to the Second Motion, the record is muddled and the issue merits further consideration. Helen-May sought, inter alia, the payment of the Daily Penalty in the First Motion. Judge Blackshear obviously denied the request; he ordered monthly payments of $5,000. There is no transcript and no written order that explains why this occurred.

When Helen-May made the Second Motion, it advanced a different theory. It sought use and occupancy payments under a premise that equated the reasonable rental value of the Property with the expected return on a $1.4 million investment. The Court fixed the reasonable rental rate based on the sole evidence presented – Barbanti's testimony – and the most pertinent evidence did not surface until Part II of that hearing, when the parties disclosed the existence (to me) of the Occupancy Agreement, and Lefkowitz testified that $45,000 reflected the actual use and occupancy paid under the Occupancy Agreement. In fairness, the parties may have believed, based upon the earlier proceedings, that Judge Blackshear had rejected the argument that Helen-May was entitled to $1,500 per day on an ongoing basis as an administrative claim.

Moreover, the debtor used and occupied the Property for over three years. Assuming that Barbanti's methodology was sound, any increase or decrease in the value of the Property might result in a change in the reasonable rental value. The debtor occupied the Property for two years after the July 2005 hearing, and during that period, it is certainly possible that the market value of the Property changed, and consequently, the reasonable rental value might also have changed.

Finally, reopening the issue does not risk prejudice to any party in interest. "In this context prejudice does not mean harm resulting from the failure to adhere to the prior decision; rather, it refers to a lack of sufficiency of notice or a lack of sufficient opportunity to prepare armed with the knowledge that the prior ruling is not deemed controlling." United States v. Uccio, 940 F.2d 753, 758 (2d Cir. 1991) (quotations and citations omitted). Helen-May has pressed its right to recover $1,500 per day for over two years. Even BFK observed that the testimony at the July 2005 hearing was "somewhat bizarre," and that the oral testimony and written papers should "negate each other." (Transcript of Hearing, held May 7, 2009, at 7-8)(ECF Doc. # 271.) All parties were on notice that the issue might be reviewed, and submitted

19

papers on the point. In addition, the parties will be afforded an opportunity to present evidence on the issue.

Accordingly, the Court will exercise its discretion to take evidence and consider (or reconsider) the reasonable rental value of the Property during the debtor's approximate three-year use and occupation. To the extent necessary, the Court can modify the Judgment to reflect the result.

The amount of Helen-May's administrative claim is also relevant to the amount of damages the Trustee seeks to recover in the Fiduciary Litigation. The defendants in the Fiduciary Litigation filed objections to the Second Settlement, as modified, all of the parties are before the Court, and no one has demanded a jury. The Court will, therefore, consolidate the issue of the amount of Helen-May's administrative claim raised in this contested matter with the same issue raised in connection with the Fiduciary Litigation, and try them at the same time. See FED. R. CIV. P. 42(a) (made applicable to the Fiduciary Litigation by FED. R. BANKR. P. 7042 and the contested matter by FED. R. BANKR. P. 9014(c)).

The Court has considered the parties' remaining arguments, and concludes that they lack merit. The parties are directed to contact chambers to schedule a conference. Settle order on notice.

Dated: New York, New York
       August 18, 2009

                              /s/ *Stuart M. Bernstein*
                              STUART M. BERNSTEIN
                              Chief United States Bankruptcy Judge

20