UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
In re:                                                       :
                                                             :
KOLLEL MATEH EFRAIM, LLC, a/k/a                              :    Chapter 7
MATEH EPHRAIM LLC, a/k/a                                     :    Case No. 04-16410 (SMB)
KOLEL MATEH EFRAIM,                                          :
                                                             :
                                      Debtor.                :
-------------------------------------------------------------X
ROBERT GELTZER, as Chapter 7 Trustee of                      :
the Estate of Kollel Mateh Efraim, LLC, a/k/a                :
Mateh Ephraim LLC, a/k/a Kolel Mateh                         :
Efraim,                                                      :
                                                             :
                                      Plaintiff,             :
                                                             :
            -- against --                                    :    Adv. Proc. No. 07-2052
                                                             :
KOLLEL MATEH EFRAIM, LLC, a/k/a                              :
MATEH EPHRAIM LLC, a/k/a KOLEL                               :
MATEH EFRAIM and KOLEL MATEH                                 :
EFRAIM,                                                      :
                                                             :
                                      Defendants.            :
-------------------------------------------------------------X

## MEMORANDUM DECISION APPROVING SETTLEMENT

**A P P E A R A N C E S:**

SQUIRE SANDERS (US) LLP
*Attorneys for Plaintiff*
30 Rockefeller Plaza, 23rd Floor
New York, New York 10112

    Robert A. Wolf, Esq.
        Of Counsel

NUTOVIC & ASSOCIATES
*Attorney for Defendant Kolel Mateh Efraim*
488 Madison Avenue
New York, New York 10022

    Isaac Nutovic, Esq.
        Of Counsel

LAW OFFICES OF DAVID CARLEBACH, ESQ.
*Attorneys for Helen-May Holdings, LLC*
40 Exchange Place
New York, New York 10005

    David Carlebach, Esq.
        Of Counsel

**STUART M. BERNSTEIN**
**United States Bankruptcy Judge:**

    The plaintiff and chapter 7 trustee, Robert Geltzer (the "Plaintiff") has moved for approval of a $65,000 settlement of the estate's alter ego claim brought against the defendant Kolel Mateh Efraim. Helen-May Holdings, LLC ("Helen-May") objected to the settlement. After receiving the parties' submissions and authorizing additional discovery, the Court conducted an evidentiary hearing at which the Plaintiff testified and submitted to cross-examination by Helen-May's attorney. The Court now overrules Helen May's objection and approves the settlement for the reasons that follow.

### BACKGROUND

    The background to the underlying dispute is discussed in the Court's prior decisions, *Geltzer v. Lefkowitz (In re Kollel Mateh Efraim, LLC)*, Adv. Proc. No. 08-1265, 2011 WL 1629665 (Bankr. S.D.N.Y. Apr. 28, 2011) and *Geltzer v. Kollel Mateh Efraim, LLC*

*(In re Kollel Mateh Efraim, LLC)*, 406 B.R. 24 (Bankr. S.D.N.Y. 2009). I assume familiarity with those decisions, and limit this discussion to the facts necessary to the disposition of the pending motion.

The first named defendant, Kollel Mateh Efraim, LLC, a/k/a Mateh Ephraim LLC, a/k/a Kolel Mateh Efraim (hereinafter, the "Debtor"), is a limited liability company organized under New York law, and is the debtor in this chapter 7 case. The sole member of the Debtor is Jack Lefkowitz. The second named defendant, Kolel Mateh Efraim (hereinafter, the "Defendant"), is a religious corporation organized under New York law. The Board of Trustees of the Defendant consists of Rabbi Abraham Steinwurzel, his wife Sarah Steinwurzel and her father Joshua Kleinman. The Defendant operates a religious congregation in a synagogue in Borough Park, Brooklyn, and Rabbi Steinwurzel is its religious leader. Jack Lefkowitz is not a member of the Defendant's congregation, and none of the Trustees of the Defendant had any formal position with the Debtor.

The gist of the Plaintiff's alter ego claim revolves around a real estate transaction in 2004, the Debtor's ensuing bankruptcy, and the seeming disregard by the Debtor and Rabbi Steinwurzel of any distinction between the Debtor and the Defendant. In April 2004, Helen-May entered into an agreement with Aron Fixler to sell certain real estate (the "Property") to Fixler. Fixler assigned the contract to the Debtor, and Rabbi Steinwurzel executed the Assignment on the Debtor's behalf. The contract of sale did

3

not close as scheduled, and the parties entered into an agreement (the "Occupancy Agreement") that allowed the Debtor to use the Property pending the closing for a fee.

On or about June 23, 2004, the Debtor purported to purchase two parcels of real estate adjacent to the Property (the "Adjacent Parcels"). The Adjacent Parcels were conveyed to an entity named in the deeds as "Kollel Mateh Efraim LLC." The New York State real property transfer tax forms executed in connection with the conveyances of the Adjacent Parcels also listed "Kollel Mateh Efraim LLC" as the transferee, and included an Employer Identification Number ("EIN") of 11–2831693. In fact, no such entity existed, and the EIN belonged to the Defendant.

On October 4, 2004, the Debtor filed a chapter 11 petition under the name "Kollel Mateh Efraim, LLC" the nonexistent entity (the "First Petition"). Lefkowitz executed the First Petition but the EIN was omitted on the first page. On November 24, 2004, "Mateh Ephraim LLC d/b/a Kollel Mateh Efraim, LLC" filed a chapter 11 petition (the "Second Petition") which Lefkowitz also executed . The Second Petition listed the same assets as the First Petition, and used EIN 11–2831693, the Defendant's EIN. By order dated November 27, 2006, the Court dismissed the Second Petition, and ordered that the caption of the First Petition, this bankruptcy case, be amended to identify the debtor as "Kollel Mateh Efraim, LLC, a/k/a Mateh Ephraim LLC, a/k/a Kolel Mateh Efraim."

For several years while the chapter 11 case was pending and the Occupancy Agreement was in effect, Rabbi Steinwurzel used the property, primarily during the summer, to conduct summer camps for teenage boys who attended his yeshiva. In

4

addition, Rabbi Steinwurzel took an active role in the Debtor's affairs. At one point during the bankruptcy case, he submitted an affidavit stating that he "work[ed] closely with the Debtor's Managing Member, Jack Lefkowitz in performing many functions for the Debtor, including managing the Debtor, paying its account payables, and helping raise funds for the Debtor." *Lefkowitz*, 2011 WL 1629665, at *3 (internal quotation marks omitted). He signed a number of the monthly operating statements in the case. He also opened the first debtor-in-possession bank account (the "DIP Account") in the name "Kolel Mateh Efraim D.I.P." at the same Borough Park branch of Astoria Federal where the Defendant maintained its account, used the Defendant's EIN to open the account, was the sole authorized signatory and thereafter drew checks to pay liabilities of the Debtor and the summer camp. The Debtor did not earn any income, and the DIP Account was funded by the Defendant and by the fees paid by the parents of the boys that attended the summer camps.

 Based primarily on these facts, Helen-May commenced this adversary proceeding for a declaration that (1) the Defendant was the actual debtor in the case, and/or (2) the Defendant and the Debtor are alter egos. Following the conversion of the case to chapter 7, the Plaintiff was substituted as plaintiff for Helen-May. The parties conducted discovery and prepared for trial. The Plaintiff withdrew the first claim for relief, but continued to pursue the alter ego claim. The Court denied the Plaintiff's motion to strike the Defendant's jury demand, and the District Court withdrew the reference and scheduled a trial.

5

On or near the eve of trial, the Plaintiff and Defendant entered into a settlement pursuant to which the Defendant agreed to pay $65,000, and the parties agreed to exchange general releases. The District Court referred the matter back to this Court for consideration of the settlement.

The Plaintiff filed his amended motion pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure to approve the settlement on June 22, 2012. According to the supporting affirmation of the Plaintiff's attorney,[1] the Plaintiff was principally concerned with the key defense that Rabbi Steinwurzel acted without any authority conferred on him by the Defendant when he involved himself in the Debtor's affairs and used the Defendant's funds, EIN and name in the process. (*Wolf Affirmation* at ¶ 26.) His discovery revealed that the officers and members of the Defendant's congregation were unaware of his activities. (*Id.*) The plaintiff was also concerned that the jury could be sympathetic to the deleterious financial consequences that the Defendant might face if the Plaintiff prevailed. (*Id.*) In addition, the Plaintiff feared the cost of the trial, which was expected to last two weeks. (*See id.*at ¶ 27.)

Finally, the Plaintiff expressed a concern regarding the collectability of a judgment. He stated that the Defendant's only known asset was the real estate that

---

[1] *See Affirmation of Robert A. Wolf, Esq. in Support of Trustee's Motion for an Order Approving a Stipulation of Settlement Between Plaintiff Robert L. Geltzer, as Chapter 7 Trustee and Defendant Kolel Mateh Efraim Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure*, dated June 22, 2012 ("Wolf Affirmation") (ECF Doc. # 54).

6

housed its synagogue. The Plaintiff considered it likely that the Defendant would take legal steps, including filing bankruptcy, to avoid its loss. (*Id.* at ¶ 26 n.4.)

Helen-May objected to the settlement.[2] It considered the lawsuit winnable, (*see Helen-May Objection* at ¶¶ 5-6), the Plaintiff's reasons for settlement "nonsensical," (*id.* at ¶ 7), "ludicrous," (*id.*), "ridiculous," (*id.* at ¶ 8), and "circuitous," (*id.* at ¶ 9), and his conduct a breach of his fiduciary obligations to the estate and its creditors. (*Id.* at ¶ 12.) The Plaintiff's reply[3] again highlighted the lack of support for the position that the Defendant authorized any of the actions taken by Rabbi Steinwurzel. (*Plaintiff's Reply* at ¶¶ 5-12.)

The Court conducted a hearing on the Plaintiff's motion on or about July 19, 2012. From the argument, it appeared that Rabbi Steinwurzel lacked authority under New York's Religious Corporations Law to bind the Defendant by his singular actions, the key defense. Nevertheless, while the Plaintiff had taken discovery of Rabbi Steinwurzel (who had also testified in another trial) and the members of the congregation, he had not deposed the Defendant's other Trustees. It was possible that they could have authorized or subsequently ratified Rabbi Steinwurzel's acts formally or by accepting the benefit of those acts with knowledge of what he had done. The

---

[2]    *See Helen May Holding LLC's Objection to the Chapter 7 Trustee's Motion Pursuant to F.R.B.P. 9019 for an Order Approving Stipulation of Settlement Between Plaintiff Robert L. Geltzer as Chapter 7 Trustee and Defendant Kollel Mateh Efraim*, dated July 12, 2012 ("*Helen-May Objection*") (ECF Doc. # 55). The principal of Helen-May and her husband also filed objections. (*See* ECF Doc. # 58.)

[3]    *See Trustee's Reply to Objection of Helen-May Holdings LLC to Trustee's Motion Pursuant to F.R.B.P. 9019 for Order Approving Stipulation of Settlement Between Trustee and Defendant Kolel Mateh Efraim*, dated July 17, 2012 ("*Plaintiff's Reply*") (ECF Doc. # 56).

7

Court granted the attorney for Helen-May the opportunity to take the deposition of Sarah Steinwurzel,[4] which finally occurred on December 17, 2012. The parties submitted supplemental pleadings, and the Court conducted an evidentiary hearing on March 6, 2013.

The only witness to testify at the hearing was the Plaintiff. In addition to reiterating his prior reasons for settling the case, he testified that Sarah Steinwurzel's deposition confirmed his judgment to settle. She had testified that she was not aware of the DIP Account or the transactions that her husband had entered into or the documents he had signed in the name of the Debtor. There was no evidence that the Defendant's Board of Trustees ever met or voted to authorize any of Rabbi Steinwurzel's activities, and all evidence pointed to the fact that Rabbi Steinwurzel acted on his own without any authority from or knowledge of the Defendant or its Board. (Transcript of hearing, held March 6, 2013, at 6-7, 10-11 (ECF Doc. # 63).)

In addition, it did not appear that the Defendant derived any benefit from these activities. Rabbi Steinwurzel used the Property for the benefit of the yeshiva that he ran separately from the Defendant, and most of the boys who attended the camp were not sons of members of the Defendant's congregation. (*Id.* at 16-17.)

Lastly, the case would be more expensive to try than the Plaintiff had first estimated. Instead of a two week trial, the joint pretrial order submitted to the District

---

[4]   The Court was advised at the hearing that she was the only other surviving Trustee. At her deposition, however, she testified that her father was still alive.

8

Court had estimated that the Plaintiff's case would consume four days, and the Defendant's case would last eight to ten days. (*Id.* at 28.)

## DISCUSSION

On a motion to approve a settlement, a bankruptcy court does not decide the underlying questions of law or fact. *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir.), *cert. denied*, 464 U.S. 822 (1983). Instead, the court must make an informed, independent judgment, *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968), that the settlement does not fall "below the lowest point in the range of reasonableness." *W.T. Grant*, 699 F.2d at 608 (internal quotation marks and citation omitted). The decision is based on several factors including the risks and rewards of continued litigation, the possibility of delay, increased costs and difficulty in collection even if the trustee prevails, the interest of the creditors and whether they support the settlement, the competency of counsel that support the settlement and the extent to which the settlement reflects an arms-length bargain. *See Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC)*, 478 F.3d 452, 462 (2d Cir. 2007).

Here, the Plaintiff made an appropriate analysis of the risks and rewards of continuing to trial. It is well-settled under New York law that a religious corporation can act only through its Board of Trustees, and an individual trustee or officer has no authority to bind it. In the leading case, *People's Bank v. St. Anthony's Roman Catholic Church of Brooklyn*, 17 N.E. 408 (N.Y. 1888), the New York Court of Appeals explained:

9

> Whatever powers were conferred on the corporation may be exercised in its behalf by the trustees. They, acting as a board, can make or authorize acts binding on the corporation, and they alone. Their sanction or authority is essential to a valid corporate act. The qualification that the collective authority of the trustees, acting as a board, is essential in order to bind the corporation by the action of its trustees, is a recognized doctrine of the law of corporations. *The trustees of a corporation have no separate or individual authority to bind the corporation; and this, although the majority or the whole number, acting singly and not collectively as a board, should assent to the particular transaction.*

*Id.* at 410 (emphasis added); *accord Congregation Anshe Kesser v. Jewish Cmty. Ctr. of Corona, L.I., Inc.*, 174 N.Y.S.2d 178, 180-81 (N.Y. App. Div. 1958) ("Respondent is a religious corporation, and its property is in the custody and control of its board of trustees (Religious Corporations Law, § 5). Neither its trustees nor its other officers have separate individual authority to bind the corporation. Collective action as a board is necessary.") The Plaintiff's decision to settle, following extensive discovery, was based primarily on his review of the facts indicating that the Defendant's Board of Trustees never authorized Rabbi Steinwurzel's acts on the Debtor's behalf, were unaware of his acts and the Defendant did not benefit from them although Rabbi Steinwurzel may have benefitted individually.[5]

The Plaintiff also showed a proper concern for the cost of litigating a possible three week jury trial with such dim prospects. Without the settlement, the estate has approximately $100,000. The Plaintiff and his attorneys will burn through that well before the trial ends and be forced to fund the balance of the suit through unreimbursed services and out of pocket expenses. On the other hand, Helen-May is out of the money

---

[5]    I have not considered the Plaintiff's speculation regarding a jury's sympathies in reaching this conclusion.

(the Debtor is administratively insolvent) and risks nothing beyond someone else's time and money if the Plaintiff litigates and loses.[6]

Other factors support the settlement as well. No other creditor has objected, and while Helen-May is the largest creditor, there are substantial administrative creditors from the chapter 11 period that will not receive any distribution. Furthermore, the lawyers for the parties to the litigation are competent, and negotiated this settlement at arms-length.

In reaching my conclusion, I discount the Plaintiff's view that a judgment against the Defendant would be uncollectible, or that the Defendant does not have sufficient assets to pay the claims of the Debtor's creditors. The Defendant owns a building in Borough Park. The Plaintiff did not inquire into its value or any encumbrances. If the value of the asset exceeds the Defendant's liability to the Debtor's creditors and its own creditors, and the Plaintiff wins his lawsuit, the Defendant's bankruptcy may stay collection but the Defendant will still have to pay all of the debts in full. Nevertheless, this only matters if the Plaintiff wins the case, and his principal reason for settling it is his judgment that he will lose.

---

[6] At one point, the Court suggested to Helen-May's counsel that if Helen-May thought the case was so meritorious, it should buy the claim from the Plaintiff for the settlement amount and prosecute it at its own expense. Helen-May never did.

Accordingly, the factors that inform the Court's independent judgment convince it that the settlement falls well within the lowest point of the range of reasonableness, and the settlement is approved.

Settle order on notice and a separate judgment dismissing the adversary proceeding.

So ordered.

Dated: New York, New York
　　　　May 15, 2013

　　　　　　　　　　　　　　　　　　　　　　/s/ *Stuart M. Bernstein*
　　　　　　　　　　　　　　　　　　　　　　STUART M. BERNSTEIN
　　　　　　　　　　　　　　　　　　　　　　United States Bankruptcy Court