Page 1

1   UNITED STATES BANKRUPTCY COURT

2   SOUTHERN DISTRICT OF NEW YORK

3   Case No. 14-11229 (SCC)

4   - - - - - - - - - - - - - - - - - - - - - - - - - - x

5

6   In the Matter of:

7

8   IKEDA, INC.,

9           Debtor.

10

11   - - - - - - - - - - - - - - - - - - - - - - - - - - x

12

13                   U.S. Bankruptcy Court

14                   One Bowling Green

15                   New York, New York

16

17                   August 6, 2014

18                   11:16 AM

19

20

21

22   B E F O R E :

23   HON  SHELLEY C. CHAPMAN

24   U.S. BANKRUPTCY JUDGE

25

1    Hearing re: Doc #7 Application to Employ Law Offices of

2    Robert L. Geltzer as Attorney for the Trustee

3

4    Hearing re: Doc #8 Application to Employ Davis, Graber,

5    Plotzker & Ward, LLP as Accountant for the Trustee

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25   Transcribed by:   Jamie Gallagher

```
 1   A P P E A R A N C E S :

 2   LAW OFFICE OF ROBERT GELTZER

 3        Attorney for the Trustee

 4        1556 3rd Avenue #505

 5        New York, NY 10128

 6

 7   BY:   ROBERT GELTZER, ESQ.

 8

 9   UNITED STATES DEPARTMENT OF JUSTICE

10        Attorney for the U.S. Trustee

11        Office of the U.S. Trustee

12        201 Varick Street

13        Suite 1006

14        New York, NY 10014

15

16   BY:   ANDREA B. SCHWARTZ, ESQ.

17

18   DAVIS, GRABER, PLOTZKER & WARD, LLP

19        Attorney for the

20        150 East 58th Street

21        20th Floor

22        New York, NY 10155

23

24   BY:   ANDREW W. PLOTZKER, CPA

25
```

Page 4

1                    P R O C E E D I N G S

2           THE COURT:  Mr. Geltzer, come on up.  Ikeda, Inc.

3    Well, Mr. Geltzer, I learned a new word yesterday as I was

4    preparing for this hearing.

5           MR. GELTZER:  I beg your pardon, Judge?

6           THE COURT:  I learned a new word, but I'm not

7    exactly sure how to pronounce it.

8           MR. GELTZER:  Logomachy.

9           THE COURT:  Logomachy.  I'm so excited.  I love

10   words.  That's a very good word.

11          MR. GELTZER:  At least I did one thing right.

12          THE COURT:  You did one thing right.

13          MR. GELTZER:  Good morning, Your Honor, do you

14   want my appearance on the record?

15          THE COURT:  Sure.

16          MR. GELTZER:  I'm Robert L. Geltzer, trustee and

17   proposed counsel to the trustee.  Your Honor, these are my

18   motions for orders to retain my firm as counsel --

19          THE COURT:  Right.

20          MR. GELTZER:  -- to me as trustee and to retain

21   Davis Graber as accountant to the trustee.  Mr. Plotzker

22   from Davis Graber is here.

23          Your Honor, there are two typos in my paper which

24   I would like to call --

25          THE COURT:  Okay.

Page 5

1          MR. GELTZER:  -- to the Court's attention for

2     which I apologize.  First, on page 12, the second bullet,

3     first line, third word from the end, should the "cases", not

4     "case".

5          THE COURT:  Which bullet?  The second bullet?

6          MR. GELTZER:  Page 12, second bullet.

7          THE COURT:  "All the cases", okay.

8          MR. GELTZER:  And page 15, first bullet, seventh

9     line, fourth word from the end should be "is", not "are".

10          THE COURT:  Okay.

11          MR. GELTZER:  Now, Judge, while I stand on my

12     papers I wish to make -- to state three quick things.

13          THE COURT:  Okay.

14          MR. GELTZER:  Thing one is that when I first read

15     the United States Trustee's objection, I thought right away

16     of that Peggy Lee song.  Do you know the song I mean, If

17     That's All There Is, because if that's all there is by the

18     cases that they cite in their papers without any statutory

19     predicate, than their opposition, I think, simply cannot be

20     sustained.

21          Thing two was that just as Your Honor wrote in GSC

22     Group, there was "no coherent, let alone compelling,

23     explanation of this extraordinary measure."  The proposed

24     language adds nothing.  It makes no sense when the UST and

25     the Courts are the final arbiters, a fee's to be paid

Page 6

1     regardless of the rates asked for for the amounts billed.

2                THE COURT:  Let me ask you a question.

3                MR. GELTZER:  Yes.

4                THE COURT:  You file your retention application,

5     you disclose your fees, right?  Surely it couldn't be the

6     case that you get retained and the next month you triple

7     your fees and you don't tell anyone.  In your view, okay,

8     and I will put Ms. Schwartz through her paces as well, but

9     in your view, surely that wouldn't be okay, right?  That

10    wouldn't be okay to do that.  I know it's not this case, but

11    I'd like to tease out, you know, kind of the parameters --

12                MR. GELTZER:  Of course not.

13                THE COURT:  -- by looking to an extreme example

14    and I'm not suggesting you would ever do that, but surely

15    that wouldn't be good.

16                MR. GELTZER:  Of course not, Your Honor.

17                THE COURT:  Right?

18                MR. GELTZER:  That would be -- simply put --

19                THE COURT:  It would be --

20                MR. GELTZER:  -- that would be wrong.

21                THE COURT:  That would be wrong.  That would be

22    misleading the Court --

23                MR. GELTZER:  That would be a misrepresentation,

24    misleading the Court.

25                THE COURT:  Right.

Page 7

1          MR. GELTZER:  But even if someone had the

2     unmitigated audacity to do that, and even if they

3     intentionally wanted to mislead the Court, at the end of the

4     day --

5          THE COURT:  The U.S. Trustee would do what they

6     did in GSC --

7          MR. GELTZER:  -- is going to see it, and the

8     Court --

9          THE COURT:  -- and come in and say, disallow all

10    the fees.

11         MR. GELTZER:  -- is going to be irate and say,

12    counsel, just three months before?

13         THE COURT:  Right.

14         MR. GELTZER:  So there's the protection there.

15    The safeguard is there.  Moreover, my 10 percent solution

16    would take care of that problem if there is one.

17         THE COURT:  Is that another literary illusion?

18         MR. GELTZER:  You know, there's the Sherlock

19    Holmes 2 percent.

20         THE COURT:  Sherlock Holmes, 7 percent.

21         MR. GELTZER:  I'd rather be doing that in

22    literature than this, Your Honor.

23         THE COURT:  Okay.  So what's thing number 3?

24         MR. GELTZER:  But then -- and it makes no sense.

25    No abuse crying out for correction is cited by the UST to

Page 8

1    rise to the magnitude of a "compelling reason" for the

2    proposed language.  It comes out of the blue.  Their

3    language comes out of the blue.  And it comes out of the

4    blue after decades of Courts signing thousands of retention

5    orders without the proposed language.  There --

6              THE COURT:  But also signing thousands of

7    retention orders with the proposed language, right?

8              MR. GELTZER:  I don't believe -- I'm sorry, I

9    obviously didn't check --

10             THE COURT:  I mean, I didn't --

11             MR. GELTZER:  -- the thousands of orders, but I

12   don't --

13             THE COURT:  -- I didn't either, but I recall from

14   my 27 years in private practice, I'm not the only one who

15   can make the "I've been doing this for a long time"

16   statement.  I mean, you folks are not the only ones who can

17   do that.  But in my 27 years of practice, including my eight

18   years of being in charge of all the fees in the Adelphia

19   case, one of the largest cases ever filed in this Court, I

20   recall vividly when a rate increase went into effect.  There

21   was a supplemental affidavit that was filed on the docket.

22   I never even thought about whether it was required by the

23   statute, by the rules.  It just seemed like a best practice

24   and something that one ought to do.  So -- and I'm reading

25   into your olive branch that you don't disagree with that,

Page 9

1      that as a best practice, it's not a bad idea.

2             MR. GELTZER:  I disagree wholeheartedly with the

3      proposed language.  I obviously don't disagree with my 10

4      percent solution.  But you see, in the Adelphia case that

5      went on for eight years as you just said, I think you said

6      eight years, Your Honor, involving hundreds of millions of

7      dollars over eight years, that's a lot more reasonable that

8      that supplemental disclosure should be voluntarily made than

9      it is in Chapter 7 cases where a trustee can have hundreds

10     of cases.  And if he makes one mistake, he's in violation of

11     a Court order.  And as I said in my letter --

12            THE COURT:  What do you mean by the one mistake?

13            MR. GELTZER:  If he forgets to submit a -- one of

14     the supplemental affidavits in case X, Y, Z -- makes one

15     mistake, doesn't submit it.  He's in violation of the

16     retention order that said he would, all right?  And the

17     Court knows, as I said in my papers, that if you're removed

18     from one case for a violation of an order, you're removed

19     from all your cases.  That's kind of harsh.  That's kind of

20     harsh.

21            In addition, as I said in my letter and I don't

22     make any secret about it, I'm particularly concerned about

23     that because of certain treatment I've received from a

24     couple of people in the Office of the United States Trustee

25     over the last year.  You might think things are being looked

Page 10

1    at a little bit more seriously or I've been scrutinized on a

2    couple of things more so.  So I'm particularly sensitive to

3    that.  But that doesn't matter.  I still think the language

4    is wrong.  There's no statutory basis or any "compelling

5    reason" --

6            THE COURT:  So you agree with Ms. Schwartz's

7    statement that you -- a professional, generally, and this is

8    largely was GSC was about, although there, there was --

9    there were violations of statutory provisions, that the

10   professional does proceed at his or her peril to the extent

11   that there is not disclosure of something that someone might

12   later say ought to have been disclosed, right?

13           MR. GELTZER:  Someone might say --

14           THE COURT:  You proceed at your peril by -- in

15   other words, by -- you raise your rates in a case and you

16   get to the end of the day and it --

17           MR. GELTZER:  You don't get paid.

18           THE COURT:  You don't get paid.

19           MR. GELTZER:  Right.

20           THE COURT:  I mean, look, I mean, I understand in

21   some cases it would be a high class problem, right, for you

22   to have collected enough that you could actually assert a

23   full claim for all the fees.  I mean, my experience is that

24   it's as likely as not that the trustee and his or her

25   professionals take a reduction because at the end of the day

Page 11

1   in order for there to be any distribution, there needs to be

2   a reduction.

3         MR. GELTZER:  So often that happens, most of the

4   time that happens.  But yes, you proceed at your peril.  You

5   raise the rates, especially in the extreme example that the

6   Court gave.  If someone does that, not only, you know, in

7   that situation if I were the Court I'd not only wouldn't

8   give him the raised rate, I would look at why they did it

9   and maybe cut the original rate, you know, with that kind of

10  phoniness going on.

11        THE COURT:  Right, well -- right, right.

12        MR. GELTZER:  So here there's no compelling reason

13  to seek what I regard as an extraordinary measure.  So just

14  as Your Honor was perplexed in GSC, I'm perplexed here.

15        And my third point -- my third thing is just this

16  morning at 9:33, I believe, Your Honor entered an order in

17  the Benchmark Solution's case in which I sought to retain

18  and did Mr. Wolf's firm.  There was no opposition to that as

19  I said in my response to the UST's opposition, and the Court

20  entered the order without the proposed language but with my

21  10 percent solution.  So I'm perplexed and it seems if it's

22  right there --

23        THE COURT:  Well, look -- look, I mean, I look,

24  you know, I -- when I see that the U.S. Trustee signs off --

25  I never enter a fee order without the U.S. Trustee signing

Page 12

1    off.

2            MS. SCHWARTZ:  Well, I didn't sign off on that,

3    Your Honor.

4            THE COURT:  But your office did.

5            MS. SCHWARTZ:  I'm the person.  I would have

6    signed off.  I'm the -- I'm assigned to Mr. Geltzer.  I did

7    not sign off on that order.

8            THE COURT:  Okay, hold on, let me get -- I need to

9    get to the bottom of this.  We entered an order without a

10   U.S. Trustee signoff?

11           MR. GELTZER:  Yes, because it was made on a motion

12   as is this.  It was a motion.

13           THE COURT:  Okay.

14           MR. GELTZER:  And there was no opposition to the

15   motion.

16           THE COURT:  And there was no opposition, okay.

17   What I'm saying is that -- I mean, there's a number of

18   different paths to get an order entered because I like to

19   try to be efficient.  So when it's -- often time firms will

20   just submit the orders and if there's not a U.S. Trustee

21   signoff, my chambers is directed to get a U.S. -- for the

22   debtor, whoever professional, to get the U.S. Trustee's

23   signoff and I don't enter it.  If this was a motion and --

24   with an objection deadline and there's no objection, then

25   I'm going to enter the order.

1              MR. GELTZER:  Yes, the UST has held --

2              THE COURT:  Wait, but hold on.

3              MR. GELTZER:  I'm sorry.

4              THE COURT:  I'm just trying to get to the bottom

5    of this, Ms. Schwartz.

6              MS. SCHWARTZ:  Just on that issue, yes, Your

7    Honor.

8              THE COURT:  Did something happen here that

9    shouldn't have happened?

10             MS. SCHWARTZ:  Yes, it was understood that there

11   wouldn't be any orders being submitted to the Court until

12   this issue was resolved with Your Honor.  All the other --

13             THE COURT:  That was not --

14             MS. SCHWARTZ:  I understand.

15             THE COURT:  I had no way of knowing that.

16             MS. SCHWARTZ:  But that agreement was with me and

17   Mr. Geltzer's office.  Therefore, I was not aware that there

18   was another application pending.  All of the other

19   applications have been held in abeyance, as cited in

20   Mr. Geltzer's papers, pending resolution of this issue.

21             THE COURT:  Okay, but --

22             MR. GELTZER:  That's not -- I'm sorry, Judge.

23             THE COURT:  Can we -- hold on --

24             MR. GELTZER:  That's not accurate because --

25             THE COURT:  Can we stop for a moment because I

Page 14

1    need to make sure that my process is -- that I haven't done

2    something inappropriate.  There was -- I didn't know about

3    what you're now telling me, okay?  I had no way of knowing

4    that.  So, just to clear my chambers, okay?

5            MS. SCHWARTZ:  Your Honor, I'm not saying that you

6    did.  I --

7            THE COURT:  I had no way of --

8            MS. SCHWARTZ:  That was my agreement with

9    Mr. Geltzer.  And I had gone through with Mr. Geltzer's

10   staff, any case I knew about with respect to retentions.

11   Usually what happens, Your Honor, with a Chapter 7 trustee

12   is that they send the U.S. Trustee's office their

13   applications to retain professionals for --

14           THE COURT:  Right.

15           MS. SCHWARTZ:  -- as Your Honor knows --

16           THE COURT:  Right.

17           MS. SCHWARTZ:  -- U.S. Trustee review and sign

18   off --

19           THE COURT:  And sign off.

20           MS. SCHWARTZ:  -- on the no objection line.

21           THE COURT:  Right.

22           MS. SCHWARTZ:  Mr. Geltzer has taken a different

23   tact because this issue is a very important issue to him and

24   he decided to put them on for motion.  That's not the way

25   I've worked with other trustees, Your Honor.  I wasn't aware

04-16410-smb    Doc 297    Filed 08/12/14    Entered 08/12/14 17:34:07    Main Document
Pg 15 of 58

Page 15

1    of that.  My understanding was that today would be the day

2    to argue with the Court over the legality and all the

3    issues, practicality, et cetera regarding this provision.

4            THE COURT:  Okay, so let me just put this issue to

5    the side for -- just let's not fight about this one right

6    now.

7            MR. GELTZER:  But it's not accurate, Judge.  I

8    just want to correct -- if you'll let me correct an

9    inaccuracy?

10           THE COURT:  Okay, you -- go ahead.  And then I

11   want to talk to Ms. Schwartz, okay?

12           MR. GELTZER:  There are -- and I only have one

13   more minute after that.

14           THE COURT:  Okay.

15           MR. GELTZER:  There are many applications of mine

16   that have been held up -- that have been sent to the UST,

17   Eastern and Southern Districts, in the normal course and

18   they've held up signing off on them.  And the case before

19   Your Honor, Ikeda and Benchmark were two of them.  On these

20   two cases, therefore, and I have cases before Judge

21   Bernstein, a couple in the Eastern District, because the UST

22   wouldn't sign off on that without the language, I've made

23   motions as I did in this one to have the retention orders

24   approved.  The U.S. -- that -- there was no agreement that I

25   wouldn't make the motion.  In fact, I told them I would and

Page 16

1    I said in my papers that I would.  So, the UST's --

2              MS. SCHWARTZ:  To clarify, Your Honor, it would be

3    adjourned --

4              MR. GELTZER:  Excuse me.  Let me just finish --

5              MS. SCHWARTZ:  -- before he --

6              MR. GELTZER:  Let me just have, let me just

7    finish --

8              THE COURT:  Stop.

9              MR. GELTZER:  -- the sentence, please.

10             THE COURT:  Stop.  You both know better.

11             MS. SCHWARTZ:  Well --

12             MR. GELTZER:  Just let me finish this sentence,

13   please.

14             THE COURT:  Okay, hold on.

15             MR. GELTZER:  There was no agreement not to make

16   the motion.  They knew of the motion.  They were served with

17   the motion.  Just like they were served with this motion and

18   opposed it, they were served with that motion.  It's not my

19   responsibility if they don't do anything after they're

20   served.  You know, I served them with the motion.

21             THE COURT:  Okay, I think --

22             MR. GELTZER:  The agreement was not to submit it

23   without their signature.

24             THE COURT:  Okay, I think Ms. Schwartz --

25             MR. GELTZER:  I did not.

Page 17

1          THE COURT:  -- is going to tell me that there was

2    an agreement to adjourn the motion.

3          MR. GELTZER:  No.  This motion -- there was an

4    agreement to adjourn this.  This was on some weeks ago and

5    Ms. Schwartz asked me to adjourn it because she was going on

6    vacation, and I certainly would be --

7          THE COURT:  Okay.

8          MR. GELTZER:  -- glad to accommodate her

9    professionally and personally.

10         THE COURT:  All right, so let me --

11         MR. GELTZER:  Then Mr. Wolf put his motion for

12   retention in Benchmark on for this same day when we were

13   going to be here.

14         THE COURT:  Okay.  All right, let me talk to

15   Ms. Schwartz for a moment.

16         MR. GELTZER:  My final point --

17         THE COURT:  Okay.

18         MR. GELTZER:  -- Your Honor, if I may.

19         THE COURT:  Go ahead.

20         MR. GELTZER:  Is that I would just request that

21   the UST enlighten us to eliminate the perplexity as to what

22   their best statutory predicate is --

23         THE COURT:  I'm going to ask her.

24         MR. GELTZER:  -- and their best case.

25         THE COURT:  I'm going to ask her.

Page 18

1          MR. GELTZER:  Because maybe I'm missing it.

2          THE COURT:  Okay.

3          MR. GELTZER:  Thank you very much, Your Honor.

4          THE COURT:  Thank you.

5          MS. SCHWARTZ:  Your Honor, I have -- I actually

6    have prepared answers to some of those questions and if Your

7    Honor would --

8          THE COURT:  Okay.

9          MS. SCHWARTS:  -- allow me.

10         THE COURT:  Sure.

11         MS. SCHWARTZ:  For the record, Andrea Schwartz for

12   the United States Trustee, Your Honor.  On another occasion

13   I had the pleasure of bringing with us our summer intern,

14   Michael Trenton (ph).  He's a Seton Law --

15         THE COURT:  Hello, welcome.

16         MR. TRENTON:  Hi, Your Honor, thank you.

17         MS. SCHWARTZ:  -- student, that's -- stand up when

18   he's introduced to the Judge.

19         THE COURT:  Where do you go to law school?

20         MR. TRENTON:  Seton Law.

21         THE COURT:  I've heard of it.  Welcome.

22         MR. TRENTON:  Thank you.

23         MS. SCHWARTZ:  Your Honor -- as Your Honor knows,

24   the heart of the U.S. Trustee's objection is centered on the

25   fundamental bankruptcy principles of disclosure and

Page 19

1   transparency.  Contrary to the trustee's claim regarding the

2   genesis of the U.S. Trustee's request for the disclosure of

3   the rate increase, and I'd like to explain to you how that

4   came about.

5           First, Your Honor, while we are not unfamiliar

6   with adversaries and even the Court questioning why the U.S.

7   Trustee chooses to weigh in on a particular matter or not,

8   the retention of professionals is squarely within the U.S.

9   Trustee's wheelhouse.

10          THE COURT:  I don't think anybody's disputing

11  that, Ms. Schwartz.

12          MS. SCHWARTZ:  Right, and Your Honor, that would

13  be under Section 586 of Title 28(a)(3)(i).  In addition,

14  Your Honor, under 586, the U.S. Trustee is charged with

15  establishing, maintaining, and supervising a panel of

16  private trustees, and that is under 586(a)(1).

17          Second, Your Honor, the Bankruptcy Code Section

18  327 and 328, Bankruptcy Rules 2014, and this Court's Local

19  Rule 2014, require disclosure of compensation arrangements.

20  And more specifically, this Court in its Local Rule 2014-1

21  provides "that the application must state 'specific facts'

22  showing the reasonableness of the terms and conditions of

23  the employment including the terms of any retainer, hourly

24  fee, or contingent arrangement.  It is plain that hourly

25  rates are required to be disclosed in the retention

Page 20

1    application.

2         Under Federal Rule of Bankruptcy Procedure 2016

3    and formerly under our Court's general orders, M-389, M-447,

4    and now as adopted as the amended guidelines for fees and

5    disbursements for professionals in the Southern District of

6    New York under our Local Rule 2016-1, fee applications

7    require that professionals must explain changes in hourly

8    rates from those previously charged and set forth that those

9    rates are for comparably skilled professionals as under

10   330."

11        THE COURT:  That last thing is on fee

12   applications.

13        MS. SCHWARTZ:  That's correct.  Now, let me say

14   something here, Your Honor.  At page 15, although a few

15   moments ago Your Honor gave the hypothetical of if the rates

16   change tripling in the next month, you would agree, trustee,

17   that that would be a problem.  And he said, that would be

18   wrong, Your Honor, right?  Yet in his response to our

19   objection on page 15, the trustee clearly makes it -- makes

20   it clear that it's really none of the U.S. Trustee's

21   business or the Court's where he says "but whether the

22   reasons for the rate increase were caused by an increase in

23   the firm's rent, the firm's desire or obligation to increase

24   its staff's health benefits, its need to pay higher

25   salaries, et cetera", he says, "I submit those reasons are

Page 21

1    frankly not and should not be within the purview of the UST

2    or the Courts."

3              THE COURT:  But that's different, he's talking

4    about the reasons.

5              MS. SCHWARTZ:  Well --

6              THE COURT:  I'm talking about the fact of the

7    increase.  The fact --

8              MS. SCHWARTZ:  Hang on, Your Honor.  Hang on one

9    second because what the Local Rule says is that they have to

10   set forth the specific facts showing the reasonableness of

11   the terms, right?  And in the fee application, they have to

12   explain why they have any rate changes.  No one is asking

13   the -- any of the professionals that disclose rate changes

14   to set forth, I have this employee who has to pay their

15   student loans.  We don't think you should set your rates at

16   that amount.  There's no -- nothing in this at all that's

17   been somehow extrapolated into the response of Mr. Geltzer

18   that the U.S. Trustee, or the Court for that matter, is

19   somehow imposing on trustees its business judgment as to

20   what your rate should be, et cetera.

21              What it simply asks for is disclosure for changes

22   in the compensation and the reasons therefore.  Because at

23   the end of the day, Your Honor, a professional gets retained

24   on, as 328(a) says, "reasonable terms", right?  So in your

25   scenario with the rate tripling three times, there would be

1    a question as to whether or not that professional was

2    retained on a reasonableness basis.  So I want to clear that

3    up because the extrapolation that's been taken in the

4    response is way out of proportion for what was requested.

5              THE COURT:  But let me ask you -- so let me ask

6    you a couple things.  One, because you put together two

7    pieces: one, that in the retention application you have to

8    disclose what your rates are, right?

9              MS. SCHWARTZ:  Right.

10             THE COURT:  And who -- your rates generally for

11   your firm and your rates -- you know, the range of the

12   rates.

13             MS. SCHWARTZ:  Yeah, like the different classes

14   Of professionals.

15             THE COURT:  The different classes of professions,

16   right?

17             MS. SCHWARTZ:  Correct.

18             THE COURT:  But, for example, in a large case,

19   depending upon how -- the twists and turns that the case

20   takes, the components of the blended rate, for example, the

21   mix of people who work on the case is going to change from

22   time to time.

23             MS. SCHWARTZ:  That's correct.

24             THE COURT:  Right?  And we'll find that out at the

25   interims and at the final.

Page 23

1          MS. SCHWARTZ:  That's one point I would like to

2    make a distinction for you on that.

3          THE COURT:  So, hold on.  So, there's that --

4          MS. SCHWARTZ:  In Chapter 11.

5          THE COURT:  In Chapter 11, okay, right.  There's

6    that --

7          MS. SCHWARTZ:  In Chapter 11s.

8          THE COURT:  Chapter 11s, right.  But same 2014,

9    2016, 330, 328, all apply.

10          MS. SCHWARTZ:  And all of the Chapter 11

11    professionals are filing notices of rate increases and

12    that's the point I wanted to make.

13          THE COURT:  Hold -- wait.  Okay, just try to --

14    we're dancing.  Let me lead a little bit, okay?

15          MS. SCHWARTZ:  You got it.

16          THE COURT:  Okay, all right.  But my question is,

17    there's nothing in the initial retention of those

18    professionals that requires that every time they make a

19    staffing change, in other words some incredibly new complex

20    issue arises that requires more $900 an hour lawyers and

21    fewer $400 an hour lawyers to make a disclosure.  Indeed, it

22    would be impossible because of the nature of those cases.

23    So you have this ambiguity about the cost of the case

24    because it's going to fluctuate from day to day.  So that's

25    kind of like point number one.

Page 24

1          Point number two is you know that I believe and

2    I've written this much, that professionals have an ongoing

3    duty of disclosure.  There's an ongoing duty of disclosure.

4    The rules would -- and the law would make no sense if you

5    did it once and then you were done.  So we have the fail

6    safe at the end of the case which is that the Court is the

7    ultimate authority on the reasonableness of the fees.

8    That's undisputed.

9          The question is what happens in between.  My view,

10   and I think we went through this in GSC, although I try to

11   forget everything we went through in GSC, is that there's an

12   ongoing duty of disclosure.  So when I put that, and perhaps

13   this is more -- this is directed at both of you -- to the

14   extent that there's an ongoing duty of disclosure, there's

15   an ongoing duty of disclosure.  And that if a rate changes,

16   it would seem to me that even though they -- it is --

17   there's not a provision in an order requiring that a

18   disclosure be made when the rate increases, that there's a

19   baseline obligation to supplement disclosures and to

20   continue to disclose.

21          MS. SCHWARTZ:  I completely agree with you, Your

22   Honor.

23          THE COURT:  Okay --

24          MS. SCHWARTZ:  That's the dispute with the

25   trustee.

Page 25

1          THE COURT:  -- such that if the trustee fails to

2     disclose, he proceeds at his peril, but he's not in

3     violation of an order requiring the disclosure.  In other

4     words, the law requires the disclosure, the supplemental

5     disclosure, the law requires it.

6          MS. SCHWARTZ:  Well, the trustee takes the

7     position that there is nothing in the statute, in the rules

8     that requires the supplemental disclosure.

9          THE COURT:  Well --

10         MS. SCHWARTZ:  So I made plain in my papers that

11    this Court, and many other Courts, have read 2014 in a

12    variety of contexts --

13         THE COURT:  Correct.

14         MS. SCHWARTZ:  -- mainly including conflicts, that

15    there is an implied, ongoing duty of supplementation.

16    That's it.

17         THE COURT:  All --

18         MS. SCHWARTZ:  And our view, Your Honor --

19         THE COURT:  Right.

20         MS. SCHWARTZ:  -- our view, Your Honor, was that

21    we're asking this of Chapter 11 professionals.  And we said,

22    gee, Chapter 3 of the Bankruptcy Code applies to all

23    chapters.  So why isn't it that the U.S. Trustee, who is

24    charged with monitoring and supervising the panel of

25    trustees, isn't requesting that the trustees also make that

Page 26

1  disclosure, as do Chapter 11.  And in fact, an initial point

2  that's very important here, often times, Chapter 7 trustees

3  don't get paid for years.  They're -- a case will go on --

4  unless there is going to be --

5           THE COURT:  Right.

6           MS. SCHWARTZ:  -- an interim distribution --

7           THE COURT:  Right.

8           MS. SCHWARTZ:  -- we have no idea.  But not just

9  us, we have no idea, the Court -- why is it that the U.S.

10  Trustee, the Court should wait three years to evaluate rate

11  increases that are being made?  What is the problem with

12  disclosing that and instilling --

13           THE COURT:  Well, but that cuts both ways in other

14  words because if you proceed at your peril by not

15  disclosing, right, and the case goes on for -- and I think

16  my record is, I think on some of the cases I inherited from

17  when I took the bench, I think 20 years, 18 years, cases go

18  on -- can go on for a long time.  So the professional

19  proceeds at his or her peril if they haven't filed that

20  disclosure.

21           But if the increases are not of the outrageous

22  nature that I posited at the beginning but are modest

23  increases that one expects professionals to do, if there's

24  an outrageous increase that the U.S. Trustee found out

25  about, then they might come in and object or -- I don't even

Page 27

1    know what the forum would be for something to happen.

2         MS. SCHWARTZ:  Well, we wouldn't be --

3         THE COURT:  What would happen?

4         MS. SCHWARTZ:  If it wasn't -- first of all, if it

5    wasn't disclosed, nothing would happen.

6         THE COURT:  No, if it was -- no, if it was

7    disclosed.

8         MS. SCHWARTZ:  Right, if it was disclosed --

9         THE COURT:  What would --

10        MS. SCHWARTZ:  -- then there would be an objection

11   filed, let's say the unreasonableness of the rate, the

12   unreasonableness of the compensation term.  Remember 328(a)

13   says that the Court can approve an order for retention on

14   reasonable terms.

15        THE COURT:  Right, but then what you're saying is

16   -- but you're saying is that you would then make a motion

17   essentially to rescind the retention order.

18        MS. SCHWARTZ:  I'm not -- we could (A) move to

19   disqualify based on an unreasonable term; we could move to

20   seek the rate go -- to be charged at the rate that was

21   disclosed at the outset of the case, possibly without

22   prejudice to an additional rate.  Maybe the -- there's no

23   absolutely no hope -- who knows what the facts are going to

24   be.

25        But the point is this, Your Honor, first of all,

Page 28

1    if the Courts infer an implied duty to supplement under

2    2014, why should it only be limited, as Mr. Geltzer

3    suggests, to conflicts and connections.  Other Courts have

4    said, as I've cited in my papers, where the source of

5    compensation wasn't disclosed or other things.  Here, it's

6    very clear --

7              THE COURT:  But if --

8              MS. SCHWARTZ:  -- 2014 requires --

9              THE COURT:  I believe that there's a duty to

10   supplement.  So to the extent that something is the law,

11   which I'm saying I believe that it's a correct view of the

12   law, of the constellation of rules and Code provisions, and

13   local rules.  Although, Ms. Schwartz, I will tell you not

14   the U.S. Trustee's guidelines, which do --

15             MS. SCHWARTZ:  I didn't even -- we didn't even

16   cite the U.S. Trustee guidelines at all.

17             THE COURT:  -- not have the force of law, as you

18   know.

19             MS. SCHWARTZ:  Your Honor, there -- we did not --

20   I am --

21             THE COURT:  Okay.

22             MS. SCHWARTZ:  -- very, very clear with respect to

23   that.  And, Your Honor --

24             THE COURT:  Okay.

25             MS. SCHWARTZ:  -- this has nothing to do with

Page 29

1    the --

2              THE COURT:  Very good, okay.

3              MS. SCHWARTZ:  -- U.S. Trustee guidelines.

4              MR. GELTZER:  But you just cited --

5              THE COURT:  Mr. Geltzer, come on.  You'll have a

6    chance to respond.

7              MS. SCHWARTZ:  This is in Your Honor's amended

8    guidelines.  This is the Court's guidelines.  It's the Court

9    that says you have to explain any changes in your rates from

10   previous or -- it's the Court's guidelines.

11             THE COURT:  In the fee application.

12             MS. SCHWARTZ:  That's correct.  However, Your

13   Honor, the -- we -- this Court is premised on disclosure and

14   transparency.

15             THE COURT:  I totally agree, but --

16             MS. SCHWARTZ:  All of the fees that the trustee

17   gets paid --

18             THE COURT:  Right.

19             MS. SCHWARTZ:  -- come from creditors, otherwise

20   money that could go to creditors.

21             THE COURT:  Right, but as a --

22             MS. SCHWARTZ:  And shouldn't it be the policy, at

23   least of our Court, to promote that.

24             THE COURT:  And I'm saying --

25             MS. SCHWARTZ:  And let me say one last thing --

Page 30

```
 1              THE COURT:  -- what I'm saying to you is that --
 2    what I'm saying to you is that number one, I believe under
 3    the law, the Code, the Rules, the Local Rules of this Court,
 4    there is an ongoing disclosure obligation, period, full
 5    stop.  Therefore, to the extent that a professional fails to
 6    make supplemental disclosure, they're proceeding at their
 7    peril.
 8              MS. SCHWARTZ:  Okay.
 9              THE COURT:  But every -- we would have orders that
10    would be 500 pages long if we imported into them every law
11    and every provision.
12              MS. SCHWARTZ:  I don't know -- Your Honor, you
13    know, that could be your parade of horribles type --
14              THE COURT:  Right.
15              MS. SCHWARTZ:  -- but it's not because this Court
16    has entered hundreds and hundreds of orders in Chapter 11
17    cases.  And as I've cited in my papers, Your Honor,
18    Mr. Togut (ph), Mr. Gazes (ph), Ms. Teasy-Milner (ph),
19    Ms. Masa Merino (ph), Mr. Messer (ph).  I could go on and on
20    and on, have all agreed to --
21              THE COURT:  Well --
22              MS. SCHWARTZ:  And I want to say one other thing
23    too.  The U.S. Trustee -- one of the themes that is present
24    in the papers of this trustee is as he includes and just
25    said before Your Honor at page 5, "I find this personally
```

1   troublesome by virtue of what I sincerely believe have been

2   acts of harassment and discrimination directed against me by

3   certain individuals in the U.S. Trustee' Office.  I submit

4   to you, Your Honor, that there are other issues at play with

5   respect to this objection and that such issues should be

6   properly handled with the U.S. Trustee and not the Court."

7   But that being said, Your Honor --

8          THE COURT:  I really don't want to get into all of

9   that --

10         MS. SCHWARTZ:  Right, I don't believe it's

11  appropriate for this Court, but I do --

12         THE COURT:  -- all right?  But I do want to --

13         MS. SCHWARTZ:  -- want to let you know one thing.

14         THE COURT:  -- understand because Mr. Geltzer

15  makes the point that the U.S. Trustee is not consistently

16  insisting on this provision --

17         MS. SCHWARTZ:  Okay.

18         THE COURT:  -- and he cites to a number of cases,

19  I believe in the Eastern District.  So --

20         MS. SCHWARTZ:  Right, Your Honor.

21         THE COURT:  -- I always want to know --

22         MS. SCHWARTZ:  Yes.

23         THE COURT:  -- what the U.S. Trustee's position --

24         MS. SCHWARTZ:  I want to tell you about that.

25         THE COURT:  Okay.

Page 32

1              MS. SCHWARTZ:  So when this whole process was --

2      when I was assigned to review Mr. Geltzer's retention

3      applications, and I raised the issue.  And also, Your Honor,

4      I don't know what page it is, page 5, where Mr. Geltzer

5      quite inappropriately puts in comments that he claims I

6      made.  I deny what he put in the paper.  But aside from

7      that, Your Honor, what happened was Mr. Geltzer had numerous

8      telephone conferences with the Assistant U.S. Trustee and

9      persuaded the U.S. Trustee to send the proposed language to

10     all of the trustees in the Southern District of New York for

11     comments to see if anybody had a problem with it, to see if

12     anybody had tweaks to it, et cetera.  She received a very

13     few minor comments, incorporated them.  So, therefore, she

14     gave all the trustees the opportunity to comment on the

15     provision at Mr. Geltzer's suggestion.  When she did, the

16     decision was made, okay, we think it would be a good

17     practice.  We think it's consistent with the Federal Rules

18     of the Bankruptcy Code, the Court's amended guidelines, et

19     cetera, that we should have that in the retention orders.

20     That's the way this came down, Your Honor.

21              So here -- we stand here today with someone who,

22     as I said, obviously has some other complaints that were --

23     he felt necessary to put in papers before Your Honor,

24     although unrelated to the actual --

25              THE COURT:  Well --

1          MS. SCHWARTZ:  -- small provision that was going

2      to go in retention orders, which, as I've noted, Your Honor,

3      all the other Judges have signed.  Now, with respect to the

4      Eastern District --

5          THE COURT:  All the --

6          MS. SCHWARTZ:  Hang on.  Hang on.

7          THE COURT:  Wait, wait, wait.  When you say all

8      the other Judges have signed it, because the normal way this

9      happens --

10          MS. SCHWARTZ:  Exactly.

11          THE COURT:  -- is that I get handed a retention

12      order, I look at it.  I specifically check to see UST no

13      objection, and I enter it.

14          MS. SCHWARTZ:  That's right.

15          THE COURT:  I do not focus on whether or not it

16      has an undertaking to file rate increases or not.

17          MS. SCHWARTZ:  Right, and let me say --

18          THE COURT:  Full disclosure, I just don't --

19          MS. SCHWARTZ:  Let me say one thing.  Right.

20          THE COURT:  -- because once the U.S. -- once I see

21      the U.S. Trustee sign off --

22          MS. SCHWARTZ:  That's right, and --

23          THE COURT:  -- and it's not because I'm a lazy --

24          MS. SCHWARTZ:  No.

25          THE COURT:  I think you know that I'm not lazy.

Page 34

1           MS. SCHWARTZ:  Yeah.  Yes, I do, Your Honor, and

2      I'm not --

3           THE COURT:  At the end of the --

4           MS. SCHWARTZ:  -- lazy either, and I read them

5      very carefully.

6           THE COURT:  At the end of the day, I know that no

7      one gets paid a dime without my saying so.

8           MS. SCHWARTZ:  That's right.  And let me say --

9           THE COURT:  So that's the ultimate --

10          MS. SCHWARTZ:  -- something else too, Your Honor,

11     that with respect to this whole filing of the motions, et

12     cetera, I will state it was my understanding that there

13     wouldn't be any litigation concerning this proceeding until

14     we -- of this provision until we actually litigated it

15     before Your Honor.  And so the fact Mr. Wolf submitted an

16     application that I don't even believe came to me and

17     submitted it and put it on motion, or maybe served me as

18     opposed to the normal procedure by which professionals

19     provide applications, which is what Mr. Wolf did initially

20     when he changed firms and sent me his applications.  I think

21     in fairness to Mr. Geltzer, he became frustrated because

22     there was a time delay happening because he had asked for

23     this procedure and notice.

24          THE COURT:  Okay, let's just chalk that up to a

25     miscommunication.  Let's --

1          MS. SCHWARTZ:  Okay, fine, but the point is the

2     reason why his applications were being held in abeyance was

3     because he thought it was appropriate to send this out and

4     give notice to all the trustees and let them comment, which

5     the U.S. Trustee did.

6          THE COURT:  Okay, all right.

7          MS. SCHWARTZ:  So we held off on the applications.

8          THE COURT:  So, Mr. Geltzer -- so the resolution

9     of this, Ms. Schwartz, maybe stand --

10         MS. SCHWARTZ:  I didn't realize he was coming up

11    behind me.

12         THE COURT:  Yeah, why don't you step -- why don't

13    you both stay at the table so I can talk to both of you at

14    the same time.

15         MS. SCHWARTZ:  Sure.

16         MR. GELTZER:  May I first reply or --

17         MS. SCHWARTZ:  Excuse me.  Excuse me.

18         THE COURT:  Why don't you both go back to the

19    table?

20         MS. SCHWARTZ:  Okay, okay, sure.

21         THE COURT:  Go back to the tables.

22         Mr. Geltzer, you can respond, but let's keep it --

23    let's keep our blood pressures down, all right?  And then

24    we're going to be done, all right?

25         MR. GELTZER:  All right, thank you, Your Honor.

Page 36

1            THE COURT:  Okay.

2            MR. GELTZER:  And my blood pressure seems to be a

3    lot lower than Ms. Schwartz's.

4            THE COURT:  She's just a zealous advocate, as are

5    you.

6            MR. GELTZER:  Let me just separate some personal

7    things.  The comments I made about harassment were in the

8    letter I sent to Ms. Rifken (ph) in May.  And --

9            THE COURT:  But that was incorporated in your

10   papers.

11           MR. GELTZER:  They're in the papers here, but

12   they're --

13           THE COURT:  Yeah.

14           MR. GELTZER:  -- in a letter in May.

15           THE COURT:  Right.

16           MR. GELTZER:  And the fact that -- I didn't

17   mention Ms. Schwartz by name in my papers, but in that

18   Ms. Schwartz indicates that it was she who initiated the

19   idea, and it was she whom I said told me on -- while she was

20   on a conference -- well, on an open speaker in my office,

21   which I disclosed to her with Mr. Wolf, Mr. Plotzker, and my

22   associate present, but even she decided that it wasn't a

23   good idea.  That's the truth, whether she denies it or not,

24   that's the truth (indiscernible).

25           MS. SCHWARTZ:  I'd like to respond on that.

Page 37

```
 1              THE COURT:  Guys, listen, listen.  We need to --
 2              MR. GELTZER:  That's the personal -- well, I
 3    didn't --
 4              THE COURT:  We need to get to the end of this.
 5              MR. GELTZER:  -- Judge, I didn't say anything
 6    personal, but if it's going to be --
 7              THE COURT:  Okay.
 8              MR. GELTZER:  -- said of me, I'm going to respond
 9    and I thank you for permitting me to do so.
10              Now, we talk about rates and disclosure of rates.
11    It's a disclosure.  I don't see anything in 2014 that
12    requires a supplemental disclosure, but let's assume --
13              THE COURT:  Read the GSC opinion.
14              MR. GELTZER:  I'm sorry, I --
15              THE COURT:  Read the GSC opinion.  It is my view
16    that there is an ongoing duty of disclosure, that the --
17    that there would be no vitality, there would be -- it's not
18    a static obligation --
19              MR. GELTZER:  Yes --
20              THE COURT:  -- it's a fluid obligation.
21              MR. GELTZER:  -- but your opinion, Judge, with all
22    due respect involved conflicts, and disclosure, and
23    disinterestedness.  And it wasn't really about rates because
24    if you have to give a supplemental disclosure about rates,
25    number one, as you started to speak up, what if the
```

Page 38

1   professional raises his rates, and the trustee knows, and

2   they object to --

3          THE COURT:  Well, I don't buy --

4          MR. GELTZER:  -- what happens?  Nothing happens.

5          THE COURT:  I don't buy -- I don't necessarily

6   agree with Ms. Schwartz about that.

7          MR. GELTZER:  Then --

8          THE COURT:  Two things, okay?  Two things, because

9   we need to be done.  Number one, it's my view under the law

10  that there's an ongoing duty of disclosure, number one.

11  Therefore, number two, there does not have to be in a

12  retention order something that states the law.

13         MR. GELTZER:  I agree with you.

14         THE COURT:  Three, you proceed at your peril if

15  you determine not to make additional disclosures.

16         MS. GELTZER:  I agree with you.  I'm sorry.

17         THE COURT:  Four, as a best practice, I believe

18  that those disclosure ought to be made.  I think it is

19  chicken soup, plus for you to put -- let me finish -- for

20  you to put in your retention your -- what you call your

21  olive branch because that takes -- that puts the world on

22  notice that in this period of time, or at -- during this

23  period of time, there may be an increase, but if it's more

24  than the 10 percent, you specifically undertake.  That does

25  not sit -- that's not a ruling that at the end of the day,

1    the U.S. Trustee can't object to the rate increase.

2              MR. GELTZER:  Agreed.

3              THE COURT:  In an environment in which legal fees

4    are flat they might say that the increase was not

5    reasonable, the type of case might -- may not have supported

6    all of that as reserved to the end, and the reason that it's

7    a best practice, and the reason that I believe that your

8    colleagues on the panel do it is because they don't want to

9    be in the proceed at your peril category.  They want to

10   follow the general principle of disclose, disclose,

11   disclose, disclose.  And you don't want to do that.  And my

12   view is that the law requires supplemental disclosure.  I

13   will enter the order with your notion in it, but I will tell

14   you I believe that it would be -- it's a best practice, it's

15   a better practice, and it may well be required by the --

16   what I view is the duty of ongoing supplemental disclosure

17   that you do it.  So --

18             MS. SCHWARTZ:  Your Honor, may I be heard --

19             MR. GELTZER:  Thank you, Your Honor.

20             THE COURT:  Hold on.

21             MS. SCHWARTZ:  May I be heard on that point,

22   please?

23             THE COURT:  Yeah, let Mr. Geltzer finish.

24             MS. SCHWARTZ:  Yes, I just want to be heard on

25   that.

Page 40

1                THE COURT:  Yes, go ahead.

2                MR. GELTZER:  Thank you.  Your Honor, you know,

3    with this supplemental disclosure, it seems like people --

4    some people think the rate is the most important thing that

5    needs to be supplementally disclosed and if so the reason,

6    but --

7                THE COURT:  No, no, no.  You made that up.  You

8    made that up.  The disclosures simply say --

9                MR. GELTZER:  It could be anything.

10               THE COURT:  -- effective January 1, the rates for

11   this person are going up to this, that, and the other thing.

12               MR. GELTZER:  That's not the point I'm making.

13   I'm saying if the UST takes the position that you have to

14   supplementally disclose the rate, and if it increases, you

15   have to give the reason for the increase, then I'm saying

16   that there -- let me just finish the thought and I think

17   I'll be able to communicate it -- then there are other

18   things that are far more important than a change of rate

19   subsequent to the initial disclosure that really could

20   affect --

21               THE COURT:  Well, that's the hypothetical --

22               MR. GELTZER:  -- the initial retention.  For

23   example --

24               THE COURT:  That's the hypothetical that I posed

25   to Ms. Schwartz and why I disagree with your statement that

Page 41

1    there has to be a reason given for the rate increase.

2    That's not the way it works.  That's not the way it works.

3    That's just not what people do.  It's not what --

4            MS. SCHWARTZ:  Actually --

5            MR. GELTZER:  But that's what they're asking for.

6    And for example, Your Honor, it's far more important if at a

7    major firm, and in the retentions it usually says the

8    partner who's primarily responsible, it's far more important

9    to supplementally disclose if that partner leaves than it is

10   whether that partner increased his rate by $75.  It's far

11   more important supplementally to disclose if maybe the whole

12   bankruptcy department left.  They're not asking for that.

13   It's far more important to disclose --

14           THE COURT:  But that's why --

15           MR. GELTZER:  -- if our firm goes into bankruptcy,

16   we'll let everybody know --

17           THE COURT:  But, that's why --

18           MR. GELTZER:  -- but they're not asking for that.

19           THE COURT:  -- I'm not -- but that's why none of

20   this is going in a retention order --

21           MR. GELTZER:  I agree.

22           THE COURT:  -- because the retention order is

23   subject to the law that you're required to make supplemental

24   disclosures of material developments that affect the

25   retention, period, full stop.

Page 42

1          MR. GELTZER:  I agree and if you don't do it --

2          THE COURT:  Okay?

3          MR. GELTZER:  -- at the end of the day, you may

4    not get paid.

5          THE COURT:  Right.

6          MR. GELTZER:  I agree with you, Judge.

7          MS. SCHWARTZ:  Yeah, I just wanted to make sure,

8    Your Honor, that that olive branch arbitrary number that was

9    proposed by the trustee was not in the order.  He could put

10   anything he wants in his affidavit, but I don't think the

11   Court's imprimatur should go on that 10 percent amount.

12         THE COURT:  I'm sorry, now I'm really confused.

13         MS. SCHWARTZ:  He said it's not going in the order

14   that his olive branch provision -- he can put that in his

15   affidavit that he's going to disclose that, et cetera, but

16   it shouldn't be "approved" that 10 percent.  Why should the

17   Court -- in other words, Your Honor, it's the --

18         THE COURT:  No, no, no.  He -- but he's --

19         MS. SCHWARTZ:  -- professional's obligation to

20   do --

21         THE COURT:  I'm really confused now.

22         MS. SCHWARTZ:  Okay.

23         MR. GELTZER:  Your Honor --

24         THE COURT:  You don't want that in the order?

25         MR. GELTZER:  Excuse me, by the way, Your Honor,

Page 43

1   you approved the retention in the --

2          THE COURT:  Hold on, hold on, please.

3          MR. GELTZER:  -- in the (indiscernible) case.

4          THE COURT:  I -- please stop for --

5          MR. GELTZER:  -- without the trustee's language

6   after Ms. Rifken's May 1 memo, this very Court.

7          THE COURT:  Could you just answer the question?

8   The language, Mr. Geltzer, are you proposing that you put

9   that in an affidavit or that it go in the order?

10          MR. GELTZER:  I put it in my affidavit.

11          THE COURT:  Okay.

12          MR. GELTZER:  And I put it in the order to try --

13          THE COURT:  If you don't want it in the order,

14   don't put it -- then don't put --

15          MS. SCHWARTZ:  I don't want it in the order.

16          MR. GELTZER:  I don't mind if it's in the order.

17          THE COURT:  Okay, don't put it in the order.

18          MS. SCHWARTZ:  It's not going in the order.

19          MR. GELTZER:  What do you mean it's not going

20   in --

21          MS. SCHWARTZ:  She just said it's not going in the

22   order.

23          MR. GELTZER:  First of all, Ms. Schwartz, try not

24   to yell at me.

25          THE COURT:  Mr. Geltzer, stop.

Page 44

1          MS. SCHWARTZ:  I'm not yelling at you.

2          THE COURT:  Stop, stop.

3          MS. SCHWARTZ:  You're rude.

4          THE COURT:  Stop, both of you.  I don't care

5    whether it's in the order.

6          MR. GELTZER:  It was in the Benchmark order.  You

7    put it in the Benchmark order.

8          THE COURT:  That's fine.  I don't --

9          MS. SCHWARTZ:  Your Honor, we'd prefer --

10         THE COURT:  This is ridiculous.

11         MR. GELTZER:  Okay, I'll leave it out of the

12   order.

13         THE COURT:  This has gotten to be ridiculous.  The

14   Benchmark order has already been entered.  Ms. Schwartz, is

15   it your position that that was an error because of an

16   understanding that you had with which Mr. Geltzer disagrees?

17   If that's the case then I will enter a revised order.

18         MS. SCHWARTZ:  That is my understanding, Your

19   Honor.

20         THE COURT:  All right, then enter a revised order

21   in the Benchmark case.

22         MR. GELTZER:  Judge, I'd just like to say for the

23   record, I don't -- I have no objection.  I'm sure Mr. Wolf

24   (indiscernible) the objection if that provision is not in

25   the order.  But I just want to make it clear, there was no

Page 45

1   agreement between me --

2           THE COURT:  You're going to have to agree to

3   disagree.

4           MR. GELTZER:  And I do, indeed.

5           THE COURT:  At worst, one of you is not telling

6   the truth.  At best, there was a miscommunication.

7           MR. GELTZER:  All right, we --

8           THE COURT:  I would rather think of it as a

9   miscommunication, all right?  So we're going to quote --

10          MR. GELTZER:  And there was a miscommunication on

11  a motion with notice.

12          THE COURT:  I'm going to call it a

13  miscommunication.  I'm going to ask you to submit a revised

14  Benchmark order without the language.  We will enter that

15  order on the docket.

16          Let me be perfectly clear.  It's this Court's view

17  that there is an ongoing duty to supplement disclosures by

18  professionals who are retained pursuant to order of this

19  Court.  At the end of the day before fees get paid, to the

20  extent that the U.S. Trustee, or any other party in

21  interest, can point to disclosures that weren't made, they

22  are entitled to do so and they are entitled to make

23  arguments for reductions, disgorgement, disallowance,

24  revocation of retention, and the like.  Any or all of the

25  above.

Page 46

1          I believe as a best practice consistent with what

2    many professionals do in this district that supplemental

3    disclosures should be made, whether or not it's in the order

4    requiring it or not, again, that's not dispositive for me

5    and for the life of me, I could not tell you whether or not

6    there was a provision in the Adelphia case that required

7    that that disclosure be made.  All I can tell you,

8    Mr. Geltzer, is like clockwork we made that disclosure.

9          I take your point that a large Chapter 11 is

10   different than a panel trustee who has -- and I don't know

11   what the number is.  I don't know if it's dozens.  I don't

12   know if it's hundreds.  I don't know.  But to the extent

13   that there seems to be an evolving practice among the panel

14   trustees, I would urge you to consider it.  You've been at

15   this a long time.  You can make your own determination.  If

16   you elect not to do that, then at the end of the day, you

17   know, there'll be a determination.

18          MR. GELTZER:  I agree with everything that you

19   said and I know this is not really before the Court, I'm

20   willing certainly to continue to put in the disclosure that

21   I put in here of the 10 percent --

22          THE COURT:  Well then that's more --

23          MR. GELTZER:  I'm willing not to -- I certainly am

24   willing --

25          THE COURT:  -- that's more protective.

Page 47

1          MR. GELTZER:  I'm certainly willing not to include

2    it in the order, but I'm just wondering now am I going to

3    have to argue this before every Judge in both of these

4    districts?

5          THE COURT:  I don't know.  I don't --

6          MR. GELTZER:  You know, that would be unfortunate,

7    but --

8          THE COURT:  I don't direct what the U.S. Trustee

9    does.  I don't direct what my colleagues do.  And --

10          MR. GELTZER:  And I make the argument -- I'm

11    certainly not looking to get on the wrong side of the U.S.

12    Trustee, but I thought this was wrong.  I thought it -- and

13    I still think it's beyond their statutory authority and the

14    case law.  And I don't accede to things.  I always assent to

15    things by anyone when I think they're wrong.

16          THE COURT:  But you just -- you know, just to call

17    the ball and strike, unless I'm missing something, you've

18    just prevailed.

19          MR. GELTZER:  I believe so, thank you.

20          THE COURT:  All right?  Subject to what I

21    described as my view of the law and best practices.

22          MR. GELTZER:  Thank you, Judge.

23          THE COURT:  All right.

24          MS. SCHWARTZ:  Thank you, Your Honor.

25          THE COURT:  All right, okay.  Try to enjoy the

Page 48

1    rest of your day.

2            MR. GELTZER:   Thank you very much.

3            THE COURT:   Thank you.

4        (Whereupon these proceedings were concluded at 12:05

5    PM)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 49

1                    C E R T I F I C A T I O N

2

3    I, Jamie Gallagher, certify that the foregoing transcript is

4    a true and accurate record of the proceedings.

5

6        Jamie              Digitally signed by Jamie
                            Gallagher
7        Gallagher          DN: cn=Jamie Gallagher, o, ou,
                            email=digital1@veritext.com,
8                           c=US
                            Date: 2014.08.08 11:36:33 -04'00'

9

10

     Veritext

11

     330 Old Country Road

12

     Suite 300

13

     Mineola, NY 11501

14

15

     Date:  August 7, 2014

16

17

18

19

20

21

22

23

24

25

[& - believe]

| & | | |
|---|---|---|
| **&**  2:5 3:18 | | |

**1**

**1**  19:16 40:10 43:6
**10**  7:15 9:3 11:21
  38:24 42:11,16
  46:21
**10014**  3:14
**1006**  3:13
**10128**  3:5
**10155**  3:22
**11**  23:4,5,10 25:21
  26:1 30:16 46:9
**11501**  49:13
**11:16**  1:18
**11s**  23:7,8
**12**  5:2,6
**14-11229**  1:3
**15**  5:8 20:14,19
**150**  3:20
**1556**  3:4
**18**  26:17

**2**

**2**  7:19
**20**  26:17
**201**  3:12
**2014**  1:17 19:18,19
  23:8 25:11 28:2,8
  37:11 49:15
**2014-1**  19:20
**2016**  20:2 23:9
**2016-1**  20:6
**20th**  3:21
**27**  8:14,17
**28**  19:13

**3**

**3**  7:23 19:13 25:22
**300**  49:12
**327**  19:18
**328**  19:18 21:24
  23:9 27:12
**330**  20:10 23:9
  49:11
**389**  20:3

**3rd**  3:4

**4**

**400**  23:21
**447**  20:3

**5**

**5**  30:25 32:4
**500**  30:10
**505**  3:4
**586**  19:13,14,16
**58th**  3:20

**6**

**6**  1:17

**7**

**7**  2:1 7:20 9:9 14:11
  26:2 49:15
**75**  41:10

**8**

**8**  2:4

**9**

**900**  23:20
**9:33**  11:16

**a**

**abeyance**  13:19
  35:2
**able**  40:17
**absolutely**  27:23
**abuse**  7:25
**accede**  47:14
**accommodate**  17:8
**accountant**  2:5 4:21
**accurate**  13:24 15:7
  49:4
**acts**  31:2
**actual**  32:24
**addition**  9:21 19:13
**additional**  27:22
  38:15
**adds**  5:24
**adelphia**  8:18 9:4
  46:6
**adjourn**  17:2,4,5
**adjourned**  16:3
**adopted**  20:4

**adversaries**  19:6
**advocate**  36:4
**affect**  40:20 41:24
**affidavit**  8:21 42:10
  42:15 43:9,10
**affidavits**  9:14
**ago**  17:4 20:15
**agree**  10:6 20:16
  24:21 29:15 38:6,13
  38:16 41:21 42:1,6
  45:2 46:18
**agreed**  30:20 39:2
**agreement**  13:16
  14:8 15:24 16:15,22
  17:2,4 45:1
**ahead**  15:10 17:19
  40:1
**allow**  18:9
**ambiguity**  23:23
**amended**  20:4 29:7
  32:18
**amount**  21:16 42:11
**amounts**  6:1
**andrea**  3:16 18:11
**andrew**  3:24
**answer**  43:7
**answers**  18:6
**anybody**  32:11,12
**anybody's**  19:10
**apologize**  5:2
**appearance**  4:14
**application**  2:1,4
  6:4 13:18 19:21
  20:1 21:11 22:7
  29:11 34:16
**applications**  13:19
  14:13 15:15 20:6,12
  32:3 34:19,20 35:2
  35:7
**applies**  25:22
**apply**  23:9
**appropriate**  31:11
  35:3
**approve**  27:13
**approved**  15:24
  42:16 43:1

**arbiters**  5:25
**arbitrary**  42:8
**argue**  15:2 47:3
**argument**  47:10
**arguments**  45:23
**arises**  23:20
**arrangement**  19:24
**arrangements**
  19:19
**aside**  32:6
**asked**  6:1 17:5
  34:22
**asking**  21:12 25:21
  41:5,12,18
**asks**  21:21
**assent**  47:14
**assert**  10:22
**assigned**  12:6 32:2
**assistant**  32:8
**associate**  36:22
**assume**  37:12
**attention**  5:1
**attorney**  2:2 3:3,10
  3:19
**audacity**  7:2
**august**  1:17 49:15
**authority**  24:7
  47:13
**avenue**  3:4
**aware**  13:17 14:25

**b**

**b**  1:22 3:16
**back**  35:18,21
**bad**  9:1
**ball**  47:17
**bankruptcy**  1:1,13
  1:24 18:25 19:17,18
  20:2 25:22 32:18
  41:12,15
**based**  27:19
**baseline**  24:19
**basis**  10:4 22:2
**beg**  4:5
**beginning**  26:22
**believe**  8:8 11:16
  24:1 28:9,11 30:2
  31:1,10,19 34:16

[believe - court]                                                                    Page 2

38:17 39:7,14 46:1
47:19
**bench** 26:17
**benchmark** 11:17
15:19 17:12 44:6,7
44:14,21 45:14
**benefits** 20:24
**bernstein** 15:21
**best** 8:23 9:1 17:22
17:24 38:17 39:7,14
45:6 46:1 47:21
**better** 16:10 39:15
**beyond** 47:13
**billed** 6:1
**bit** 10:1 23:14
**blended** 22:20
**blood** 35:23 36:2
**blue** 8:2,3,4
**bottom** 12:9 13:4
**bowling** 1:14
**branch** 8:25 38:21
42:8,14
**bringing** 18:13
**bullet** 5:2,5,5,6,8
**business** 20:21
21:19
**buy** 38:3,5

**c**

**c** 1:23 3:1 4:1 49:1,1
**call** 4:24 38:20
45:12 47:16
**care** 7:16 44:4
**carefully** 34:5
**case** 1:3 5:4 6:6,10
8:19 9:4,14,18
10:15 11:17 14:10
15:18 17:24 22:18
22:19,21 23:23 24:6
26:3,15 27:21 39:5
43:3 44:17,21 46:6
47:14
**cases** 5:3,7,18 8:19
9:9,10,19 10:21
15:20,20 23:22
26:16,17 30:17
31:18

**category** 39:9
**caused** 20:22
**centered** 18:24
**certain** 9:23 31:3
**certainly** 17:6 46:20
46:23 47:1,11
**certify** 49:3
**cetera** 15:3 20:25
21:20 32:12,19
34:12 42:15
**chalk** 34:24
**chambers** 12:21
14:4
**chance** 29:6
**change** 20:16 22:21
23:19 40:18
**changed** 34:20
**changes** 20:7 21:12
21:13,21 24:15 29:9
**chapman** 1:23
**chapter** 9:9 14:11
23:4,5,7,8,10 25:21
25:22 26:1,2 30:16
46:9
**chapters** 25:23
**charge** 8:18
**charged** 19:14 20:8
25:24 27:20
**check** 8:9 33:12
**chicken** 38:19
**chooses** 19:7
**cite** 5:18 28:16
**cited** 7:25 13:19
28:4 29:4 30:17
**cites** 31:18
**claim** 10:23 19:1
**claims** 32:5
**clarify** 16:2
**class** 10:21
**classes** 22:13,15
**clear** 14:4 20:20
22:2 28:6,22 44:25
45:16
**clearly** 20:19
**clockwork** 46:8
**code** 19:17 25:22
28:12 30:3 32:18

**coherent** 5:22
**colleagues** 39:8
47:9
**collected** 10:22
**come** 4:2 7:9 26:25
29:5,19
**comes** 8:2,3,3
**coming** 35:10
**comment** 32:14
35:4
**comments** 32:5,11
32:13 36:7
**communicate** 40:17
**comparably** 20:9
**compelling** 5:22 8:1
10:4 11:12
**compensation**
19:19 21:22 27:12
28:5
**complaints** 32:22
**completely** 24:21
**complex** 23:19
**components** 22:20
**concerned** 9:22
**concerning** 34:13
**concluded** 48:4
**conditions** 19:22
**conference** 36:20
**conferences** 32:8
**conflicts** 25:14 28:3
37:22
**confused** 42:12,21
**connections** 28:3
**consider** 46:14
**consistent** 32:17
46:1
**consistently** 31:15
**constellation** 28:12
**contexts** 25:12
**contingent** 19:24
**continue** 24:20
46:20
**contrary** 19:1
**correct** 15:8,8 20:13
22:17,23 25:13
28:11 29:12

**correction** 7:25
**cost** 23:23
**counsel** 4:17,18
7:12
**country** 49:11
**couple** 9:24 10:2
15:21 22:6
**course** 6:12,16
15:17
**court** 1:1,13 4:2,6,9
4:12,15,19,25 5:5,7
5:10,13 6:2,4,13,17
6:19,21,22,24,25
7:3,5,8,9,13,17,20
7:23 8:6,10,13,19
9:11,12,17 10:6,14
10:18,20 11:6,7,11
11:19,23 12:4,8,13
12:16 13:2,4,8,11
13:13,15,21,23,25
14:7,14,16,19,21
15:2,4,10,14 16:8
16:10,14,21,24 17:1
17:7,10,14,17,19,23
17:25 18:2,4,8,10
18:15,19,21 19:6,10
19:20 20:11 21:3,6
21:18 22:5,10,15,18
22:24 23:3,5,8,13
23:16 24:6,23 25:1
25:9,11,13,17,19
26:5,7,9,10,13 27:3
27:6,9,13,15 28:7,9
28:17,21,24 29:2,5
29:8,11,13,15,18,21
29:23,24 30:1,3,9
30:14,15,21 31:6,8
31:11,12,14,18,21
31:23,25 32:25 33:5
33:7,11,15,18,20,23
33:25 34:3,6,9,24
35:6,8,12,18,21
36:1,4,9,13,15 37:1
37:4,7,13,15,20
38:3,5,8,14,17 39:3
39:20,23 40:1,7,10
40:21,24 41:14,17

[court - filing]                                                                 Page 3

41:19,22 42:2,5,12
42:17,18,21,24 43:2
43:4,6,7,11,13,17
43:25 44:2,4,8,10
44:13,20 45:2,5,8
45:12,19 46:19,22
46:25 47:5,8,16,20
47:23,25 48:3
**court's**  5:1 19:18
20:3,21 29:8,10
32:18 42:11 45:16
**courts**  5:25 8:4 21:2
25:11 28:1,3
**cpa**  3:24
**creditors**  29:19,20
**crying**  7:25
**cut**  11:9
**cuts**  26:13

## d

**d**  4:1
**dancing**  23:14
**date**  49:15
**davis**  2:4 3:18 4:21
4:22
**day**  7:4 10:16,25
15:1 17:12 21:23
23:24,24 34:6 38:25
42:3 45:19 46:16
48:1
**deadline**  12:24
**debtor**  1:9 12:22
**decades**  8:4
**decided**  14:24 36:22
**decision**  32:16
**delay**  34:22
**denies**  36:23
**deny**  32:6
**department**  3:9
41:12
**depending**  22:19
**described**  47:21
**desire**  20:23
**determination**
46:15,17
**determine**  38:15
**developments**  41:24

**different**  12:18
14:22 21:3 22:13,15
46:10
**dime**  34:7
**direct**  47:8,9
**directed**  12:21
24:13 31:2
**disagree**  8:25 9:2,3
40:25 45:3
**disagrees**  44:16
**disallow**  7:9
**disallowance**  45:23
**disbursements**  20:5
**disclose**  6:5 21:13
22:8 24:20 25:2
39:10,10,11,11
40:14 41:9,11,13
42:15
**disclosed**  10:12
19:25 27:5,7,8,21
28:5 36:21 40:5
**disclosing**  26:12,15
**disclosure**  9:8 10:11
18:25 19:2,19 21:21
23:21 24:3,3,12,14
24:15,18 25:3,4,5,8
26:1,20 29:13 30:4
30:6 33:18 37:10,11
37:12,16,22,24
38:10,18 39:12,16
40:3,19 46:7,8,20
**disclosures**  24:19
38:15 40:8 41:24
45:17,21 46:3
**discrimination**  31:2
**disgorgement**  45:23
**disinterestedness**
37:23
**dispositive**  46:4
**dispute**  24:24
**disputing**  19:10
**disqualify**  27:19
**distinction**  23:2
**distribution**  11:1
26:6
**district**  1:2 15:21
20:5 31:19 32:10

33:4 46:2
**districts**  15:17 47:4
**doc**  2:1,4
**docket**  8:21 45:15
**doing**  7:21 8:15
**dollars**  9:7
**dozens**  46:11
**due**  37:22
**duty**  24:3,3,12,14
24:15 25:15 28:1,9
37:16 38:10 39:16
45:17

## e

**e**  1:22,22 3:1,1 4:1,1
49:1
**east**  3:20
**eastern**  15:17,21
31:19 33:4
**effect**  8:20
**effective**  40:10
**efficient**  12:19
**eight**  8:17 9:5,6,7
**either**  8:13 34:4
**elect**  46:16
**eliminate**  17:21
**employ**  2:1,4
**employee**  21:14
**employment**  19:23
**enjoy**  47:25
**enlighten**  17:21
**enter**  11:25 12:23
12:25 33:13 39:13
44:17,20 45:14
**entered**  11:16,20
12:9,18 30:16 44:14
**entitled**  45:22,22
**environment**  39:3
**error**  44:15
**especially**  11:5
**esq**  3:7,16
**essentially**  27:17
**establishing**  19:15
**et**  15:3 20:25 21:20
32:12,18 34:11
42:15
**evaluate**  26:10

**everybody**  41:16
**evolving**  46:13
**exactly**  4:7 33:10
**example**  6:13 11:5
22:18,20 40:23 41:6
**excited**  4:9
**excuse**  16:4 35:17
35:17 42:25
**expects**  26:23
**experience**  10:23
**explain**  19:3 20:7
21:12 29:9
**explanation**  5:23
**extent**  10:10 24:14
28:10 30:5 45:20
46:12
**extraordinary**  5:23
11:13
**extrapolated**  21:17
**extrapolation**  22:3
**extreme**  6:13 11:5

## f

**f**  1:22 49:1
**fact**  15:25 21:6,7
26:1 34:15 36:16
**facts**  19:21 21:10
27:23
**fail**  24:5
**fails**  25:1 30:5
**fairness**  34:21
**far**  40:18 41:6,8,10
41:13
**federal**  20:2 32:17
**fee**  11:25 19:24 20:6
20:11 21:11 29:11
**fee's**  5:25
**fees**  6:5,7 7:10 8:18
10:23 20:4 24:7
29:16 39:3 45:19
**felt**  32:23
**fewer**  23:21
**fight**  15:5
**file**  6:4 33:16
**filed**  8:19,21 26:19
27:11
**filing**  23:11 34:11

[final - increase]

**final**  5:25 17:16
  22:25
**find**  22:24 30:25
**fine**  35:1 44:8
**finish**  16:4,7,12
  38:19 39:23 40:16
**firm**  4:18 11:18
  22:11 41:7,15
**firm's**  20:23,23
**firms**  12:19 34:20
**first**  5:2,3,8,14 19:5
  27:4,25 35:16 43:23
**flat**  39:4
**floor**  3:21
**fluctuate**  23:24
**fluid**  37:20
**focus**  33:15
**folks**  8:16
**follow**  39:10
**force**  28:17
**foregoing**  49:3
**forget**  24:11
**forgets**  9:13
**formerly**  20:3
**forth**  20:8 21:10,14
**forum**  27:1
**found**  26:24
**four**  38:17
**fourth**  5:9
**frankly**  21:1
**frustrated**  34:21
**full**  10:23 30:4
  33:18 41:25
**fundamental**  18:25

**g**

**g**  4:1
**gallagher**  2:25 49:3
**gazes**  30:18
**gee**  25:22
**geltzer**  2:2 3:2,7 4:2
  4:3,5,8,11,13,16,16
  4:20 5:1,6,8,11,14
  6:3,12,16,18,20,23
  7:1,7,11,14,18,21
  7:24 8:8,11 9:2,13
  10:13,17,19 11:3,12
  12:6,11,14 13:1,3

13:22,24 14:9,22
  15:7,12,15 16:4,6,9
  16:12,15,22,25 17:3
  17:8,11,16,18,20,24
  18:1,3 21:17 28:2
  29:4,5 31:14 32:4,7
  34:21 35:8,16,22,25
  36:2,6,11,14,16
  37:2,5,8,14,19,21
  38:4,7,13,16 39:2
  39:19,23 40:2,9,12
  40:22 41:5,15,18,21
  42:1,3,6,23,25 43:3
  43:5,8,10,12,16,19
  43:23,25 44:6,11,16
  44:22 45:4,7,10
  46:8,18,23 47:1,6
  47:10,19,22 48:2
**geltzer's**  13:17,20
  14:9 32:2,15
**general**  20:3 39:10
**generally**  10:7
  22:10
**genesis**  19:2
**give**  11:8 35:4 37:24
  40:15
**given**  41:1
**glad**  17:8
**go**  15:10 17:19
  18:19 26:3,17,18
  27:20 29:20 30:19
  33:2 35:18,21 40:1
  42:11 43:9
**goes**  26:15 41:15
**going**  7:7,11 11:10
  12:25 17:1,5,13,23
  17:25 22:21 23:24
  26:4 27:23 33:1
  35:24 37:6,8 40:11
  41:20 42:13,15
  43:18,19,21 45:2,9
  45:12,13 47:2
**good**  4:10,13 6:15
  29:2 32:16 36:23
**gotten**  44:13
**graber**  2:4 3:18
  4:21,22

**green**  1:14
**group**  5:22
**gsc**  5:21 7:6 10:8
  11:14 24:10,11
  37:13,15
**guidelines**  20:4
  28:14,16 29:3,8,8
  29:10 32:18
**guys**  37:1

**h**

**handed**  33:11
**handled**  31:6
**hang**  21:8,8 33:6,6
**happen**  13:8 27:1,3
  27:5
**happened**  13:9 32:7
**happening**  34:22
**happens**  11:3,4
  14:11 24:9 33:9
  38:4,4
**harassment**  31:2
  36:7
**harsh**  9:19,20
**health**  20:24
**heard**  18:21 39:18
  39:21,24
**hearing**  2:1,4 4:4
**heart**  18:24
**held**  13:1,19 15:16
  15:18 35:2,7
**hello**  18:15
**hi**  18:16
**high**  10:21
**higher**  20:24
**hold**  12:8 13:2,23
  16:14 23:3,13 39:20
  43:2,2
**holmes**  7:19,20
**hon**  1:23
**honor**  4:13,17,23
  5:21 6:16 7:22 9:6
  11:14,16 12:3 13:7
  13:12 14:5,11,15,25
  15:19 16:2 17:18
  18:3,5,7,12,16,23
  18:23 19:5,12,14,17
  20:14,15,18 21:8,23

24:22 25:18,20
  27:25 28:19,23
  29:13 30:12,17,25
  31:4,7,20 32:3,7,20
  32:23 33:2 34:1,10
  34:15 35:25 39:18
  39:19 40:2 41:6
  42:8,17,23,25 44:9
  44:19 47:24
**honor's**  29:7
**hope**  27:23
**horribles**  30:13
**hour**  23:20,21
**hourly**  19:23,24
  20:7
**hundreds**  9:6,9
  30:16,16 46:12
**hypothetical**  20:15
  40:21,24

**i**

**idea**  9:1 26:8,9
  36:19,23
**ikeda**  1:8 4:2 15:19
**illusion**  7:17
**implied**  25:15 28:1
**important**  14:23
  26:2 40:4,18 41:6,8
  41:11,13
**imported**  30:10
**imposing**  21:19
**impossible**  23:22
**imprimatur**  42:11
**inaccuracy**  15:9
**inappropriate**  14:2
**inappropriately**
  32:5
**include**  47:1
**includes**  30:24
**including**  8:17
  19:23 25:14
**incorporated**  32:13
  36:9
**increase**  8:20 19:3
  20:22,22,23 21:7
  26:24 38:23 39:1,4
  40:15 41:1

increased 41:10
increases 23:11
  24:18 26:11,21,23
  33:16 40:14
incredibly 23:19
indicates 36:18
indiscernible 36:24
  43:3 44:24
individuals 31:3
infer 28:1
inherited 26:16
initial 23:17 26:1
  40:19,22
initially 34:19
initiated 36:18
insisting 31:16
instilling 26:12
intentionally 7:3
interest 45:21
interim 26:6
interims 22:25
intern 18:13
introduced 18:18
involved 37:22
involving 9:6
irate 7:11
issue 13:6,12,20
  14:23,23 15:4 23:20
  32:3
issues 15:3 31:4,5

**j**

jamie 2:25 49:3
january 40:10
judge 1:24 4:5 5:11
  13:22 15:7,20 18:18
  37:5,21 42:6 44:22
  47:3,22
judges 33:3,8
judgment 21:19
justice 3:9

**k**

keep 35:22,23
kind 6:11 9:19,19
  11:9 23:25
knew 14:10 16:16

know 5:16 6:10,11
  7:18 11:6,9,24 14:2
  16:10,20 22:11 24:1
  27:1 28:18 30:12,13
  31:13,21 32:4 33:25
  34:6 40:2 41:16
  46:10,11,12,12,17
  46:19 47:5,6,16
knowing 13:15 14:3
knows 9:17 14:15
  18:23 27:23 38:1

**l**

l 2:2 4:16
language 5:24 8:2,3
  8:5,7 9:3 10:3
  11:20 15:22 32:9
  43:5,8 45:14
large 22:18 46:9
largely 10:8
largest 8:19
law 2:1 3:2 18:14,19
  18:20 24:4 25:4,5
  28:10,12,17 30:3,10
  38:9,12 39:12 41:23
  47:14,21
lawyers 23:20,21
lazy 33:23,25 34:4
lead 23:14
learned 4:3,6
leave 44:11
leaves 41:9
lee 5:16
left 41:12
legal 39:3
legality 15:2
letter 9:11,21 36:8
  36:14
life 46:5
limited 28:2
line 5:3,9 14:20
listen 37:1,1
literary 7:17
literature 7:22
litigated 34:14
litigation 34:13
little 10:1 23:14

llp 2:5 3:18
loans 21:15
local 19:18,20 20:6
  21:9 28:13 30:3
logomachy 4:8,9
long 8:15 26:18
  30:10 46:15
look 10:20 11:8,23
  11:23,23 33:12
looked 9:25
looking 6:13 47:11
lot 9:7 36:3
love 4:9
lower 36:3

**m**

m 20:3,3
magnitude 8:1
maintaining 19:15
major 41:7
making 40:12
masa 30:19
material 41:24
matter 1:6 10:3
  19:7 21:18
mean 5:16 8:10,16
  9:12 10:20,20,23
  11:23 12:17 43:19
measure 5:23 11:13
memo 43:6
mention 36:17
merino 30:19
messer 30:19
michael 18:14
millions 9:6
milner 30:18
mind 43:16
mine 15:15
mineola 49:13
minor 32:13
minute 15:13
miscommunication
  34:25 45:6,9,10,13
mislead 7:3
misleading 6:22,24
misrepresentation
  6:23

missing 18:1 47:17
mistake 9:10,12,15
mix 22:21
modest 26:22
moment 13:25
  17:15
moments 20:15
money 29:20
monitoring 25:24
month 6:6 20:16
months 7:12
morning 4:13 11:16
motion 12:11,12,15
  12:23 14:24 15:25
  16:16,16,17,17,18
  16:20 17:2,3,11
  27:16 34:17 45:11
motions 4:18 15:23
  34:11
move 27:18,19

**n**

n 3:1 4:1 49:1
name 36:17
nature 23:22 26:22
necessarily 38:5
necessary 32:23
need 12:8 14:1
  20:24 37:1,4 38:9
needs 11:1 40:5
never 8:22 11:25
new 1:2,15,15 3:5
  3:14,22 4:3,6 20:6
  23:19 32:10
normal 15:17 33:8
  34:18
noted 33:2
notice 34:23 35:4
  38:22 45:11
notices 23:11
notion 39:13
number 7:23 12:17
  23:25 24:1 30:2
  31:18 37:25 38:9,10
  38:11 42:8 46:11
numerous 32:7
ny 3:5,14,22 49:13

**[o - professionals]**

**o**

o  1:22 4:1 49:1
object  26:25 38:2 39:1
objection  5:15 12:24,24 14:20 18:24 20:19 27:10 31:5 33:13 44:23,24
obligation  20:23 24:19 30:4 37:18,20 42:19
obviously  8:9 9:3 32:22
occasion  18:12
office  3:2,11 9:24 12:4 13:17 14:12 31:3 36:20
offices  2:1
okay  4:25 5:7,10,13 6:7,9,10 7:23 12:8 12:13,16 13:21 14:3 14:4 15:4,10,11,14 16:14,21,24 17:7,14 17:17 18:2,8 23:5 23:13,14,16 24:23 28:21,24 29:2 30:8 31:17,25 32:16 34:24 35:1,6,20,20 36:1 37:7 38:8 42:2 42:22 43:11,17 44:11 47:25
old  49:11
olive  8:25 38:21 42:8,14
once  24:5 33:20,20
ones  8:16
ongoing  24:2,3,12 24:14,15 25:15 30:4 37:16 38:10 39:16 45:17
open  36:20
opinion  37:13,15,21
opportunity  32:14
opposed  16:18 34:18
opposition  5:19 11:18,19 12:14,16

**order**  9:11,16,18 11:1,16,20,25 12:7 12:9,18,25 24:17 25:3 27:13,17 33:12 38:12 39:13 41:20 41:22 42:9,13,24 43:9,12,13,15,16,17 43:18,22 44:5,6,7 44:12,14,17,20,25 45:14,15,18 46:3 47:2
orders  4:18 8:5,7,11 12:20 13:11 15:23 20:3 30:9,16 32:19 33:2
original  11:9
ought  8:24 10:12 38:18
outrageous  26:21 26:24
outset  27:21

**p**

p  3:1,1 4:1
paces  6:8
page  5:2,6,8 20:14 20:19 30:25 32:4,4
pages  30:10
paid  5:25 10:17,18 26:3 29:17 34:7 42:4 45:19
panel  19:15 25:24 39:8 46:10,13
paper  4:23 32:6
papers  5:12,18 9:17 13:20 16:1 25:10 28:4 30:17,24 32:23 36:10,11,17
parade  30:13
parameters  6:11
pardon  4:5
particular  19:7
particularly  9:22 10:2
partner  41:8,9,10
party  45:20
paths  12:18

**pay**  20:24 21:14
peggy  5:16
pending  13:18,20
people  9:24 22:21 40:3,4 41:3
percent  7:15,19,20 9:4 11:21 38:24 42:11,16 46:21
perfectly  45:16
peril  10:10,14 11:4 25:2 26:14,19 30:7 38:14 39:9
period  30:4 38:22 38:23 41:25
permitting  37:9
perplexed  11:14,14 11:21
perplexity  17:21
person  12:5 40:11
personal  36:6 37:2 37:6
personally  17:9 30:25
persuaded  32:9
ph  18:14 30:18,18 30:18,19,19 36:8
phoniness  11:10
pieces  22:7
plain  19:24 25:10
play  31:4
please  16:9,13 39:22 43:2,4
pleasure  18:13
plotzker  2:5 3:18 3:24 4:21 36:21
plus  38:19
pm  48:5
point  11:15 17:16 23:1,12,25 24:1 26:1 27:25 31:15 35:1 39:21 40:12 45:21 46:9
policy  29:22
posed  40:24
posited  26:22
position  25:7 31:23 40:13 44:15

**possibly**  27:21
practicality  15:3
practice  8:14,17,23 9:1 32:17 38:17 39:7,14,15 46:1,13
practices  47:21
predicate  5:19 17:22
prefer  44:9
prejudice  27:22
premised  29:13
prepared  18:6
preparing  4:4
present  30:23 36:22
pressure  36:2
pressures  35:23
prevailed  47:18
previous  29:10
previously  20:8
primarily  41:8
principle  39:10
principles  18:25
private  8:14 19:16
problem  7:16 10:21 20:17 26:11 32:11
procedure  20:2 34:18,23
proceed  10:10,14 11:4 26:14 38:14 39:9
proceeding  30:6 34:13
proceedings  48:4 49:4
proceeds  25:2 26:19
process  14:1 32:1
professional  10:7 10:10 12:22 21:23 22:1 26:18 30:5 38:1
professional's  42:19
professionally  17:9
professionals  10:25 14:13 19:8 20:5,7,9 21:13 22:14 23:11 23:18 24:2 25:21

[professionals - schwartz]

26:23 34:18 45:18
46:2
professions  22:15
promote  29:23
pronounce  4:7
properly  31:6
proportion  22:4
proposed  4:17 5:23
8:2,5,7 9:3 11:20
32:9 42:9
proposing  43:8
protection  7:14
protective  46:25
provide  34:19
provides  19:21
provision  15:3
24:17 30:11 31:16
32:15 33:1 34:14
42:14 44:24 46:6
provisions  10:9
28:12
pursuant  45:18
purview  21:1
put  6:8,18 14:24
15:4 17:11 22:6
24:12 32:6,23 34:17
38:19,20 42:9,14
43:8,10,12,14,14,17
44:7 46:20,21
puts  32:5 38:21

**q**

question  6:2 22:1
23:16 24:9 43:7
questioning  19:6
questions  18:6
quick  5:12
quite  32:5
quote  45:9

**r**

r  1:22 3:1 4:1 49:1
raise  10:15 11:5
raised  11:8 32:3
raises  38:1
range  22:11
rate  8:20 11:8,9
19:3 20:22 21:12,13

21:20,25 22:20
23:11 24:15,18
26:10 27:11,20,20
27:22 33:16 39:1
40:4,14,18 41:1,10
rates  6:1 10:15 11:5
19:25 20:8,9,15
21:15 22:8,10,11,12
29:9 37:10,10,23,24
38:1 40:10
read  5:14 25:11
34:4 37:13,15
reading  8:24
realize  35:10
really  20:20 31:8
37:23 40:19 42:12
42:21 46:19
reason  8:1 10:5
11:12 35:2 39:6,7
40:5,15 41:1
reasonable  9:7
21:24 27:14 39:5
reasonableness
19:22 21:10 22:2
24:7
reasons  20:22,25
21:4,22
recall  8:13,20
received  9:23 32:12
record  4:14 18:11
26:16 44:23 49:4
reduction  10:25
11:2
reductions  45:23
regard  11:13
regarding  15:3 19:1
regardless  6:1
remember  27:12
removed  9:17,18
rent  20:23
reply  35:16
request  17:20 19:2
requested  22:4
requesting  25:25
require  19:19 20:7
required  8:22 19:25
39:15 41:23 46:6

requires  23:18,20
25:4,5,8 28:8 37:12
39:12
requiring  24:17
25:3 46:4
rescind  27:17
reserved  39:6
resolution  13:20
35:8
resolved  13:12
respect  14:10 28:22
31:5 33:3 34:11
37:22
respond  29:6 35:22
36:25 37:8
response  11:19
20:18 21:17 22:4
responsibility  16:19
responsible  41:8
rest  48:1
retain  4:18,20
11:17 14:13
retained  6:6 21:23
22:2 45:18
retainer  19:23
retention  6:4 8:4,7
9:16 15:23 17:12
19:8,25 22:7 23:17
27:13,17 32:2,19
33:2,11 38:12,20
40:22 41:20,22,25
43:1 45:24
retentions  14:10
41:7
review  14:17 32:2
revised  44:17,20
45:13
revocation  45:24
ridiculous  44:10,13
rifken  36:8
rifken's  43:6
right  4:11,12,19
5:15 6:5,9,17,25
7:13 8:7 9:16 10:12
10:19,21 11:11,11
11:11,22 14:14,16
14:21 15:5 17:10,14

19:12 20:18 21:11
21:24 22:8,9,16,24
23:5,8,16 25:19
26:5,7,15 27:8,15
29:18,21 30:14
31:10,12,20 33:14
33:17,19,22 34:8
35:6,23,24,25 36:15
42:5 44:20 45:7,9
47:20,23,25
rise  8:1
road  49:11
robert  2:2 3:2,7
4:16
rude  44:3
rule  19:19,20 20:2,6
21:9
rules  8:23 19:18
24:4 25:7 28:12,13
30:3,3 32:17
ruling  38:25

**s**

s  3:1 4:1
safe  24:6
safeguard  7:15
salaries  20:25
saying  12:17 14:5
27:15,16 28:11
29:24 30:1,2 34:7
40:13,15
says  20:21,25 21:9
21:24 27:13 29:9
41:7
scc  1:3
scenario  21:25
school  18:19
schwarts  18:9
schwartz  3:16 6:8
12:2,5 13:5,6,10,14
13:16 14:5,8,15,17
14:20,22 15:11 16:2
16:5,11,24 17:5,15
18:5,11,11,17,23
19:11,12 20:13 21:5
21:8 22:9,13,17,23
23:1,4,7,10,15
24:21,24 25:6,10,14

25:18,20 26:6,8
27:2,4,8,10,18 28:8
28:13,15,19,22,25
29:3,7,12,16,19,22
29:25 30:8,12,15,22
31:10,13,17,20,22
31:24 32:1 33:1,6
33:10,14,17,19,22
33:24 34:1,4,8,10
35:1,7,9,10,15,17
35:20 36:17,18,25
38:6 39:18,21,24
40:25 41:4 42:7,13
42:19,22 43:15,18
43:21,23 44:1,3,9
44:14,18 47:24
**schwartz's** 10:6
36:3
**scrutinized** 10:1
**second** 5:2,5,6
19:17 21:9
**secret** 9:22
**section** 19:13,17
**see** 7:7 9:4 11:24
32:11,11 33:12,20
37:11
**seek** 11:13 27:20
**send** 14:12 32:9
35:3
**sense** 5:24 7:24 24:4
**sensitive** 10:2
**sent** 15:16 34:20
36:8
**sentence** 16:9,12
**separate** 36:6
**seriously** 10:1
**served** 16:16,17,18
16:20,20 34:17
**set** 20:8 21:10,14,15
**seton** 18:14,20
**seventh** 5:8
**shelley** 1:23
**sherlock** 7:18,20
**showing** 19:22
21:10
**side** 15:5 47:11

**sign** 12:2,7 14:17,19
15:22 33:21
**signature** 16:23
**signed** 12:6 33:3,8
**signing** 8:4,6 11:25
15:18
**signoff** 12:10,21,23
**signs** 11:24
**simply** 5:19 6:18
21:21 40:8
**sincerely** 31:1
**sit** 38:25
**situation** 11:7
**skilled** 20:9
**small** 33:1
**solution** 7:15 9:4
11:21
**solution's** 11:17
**song** 5:16,16
**sorry** 8:8 13:3,22
37:14 38:16 42:12
**sought** 11:17
**soup** 38:19
**source** 28:4
**southern** 1:2 15:17
20:5 32:10
**speak** 37:25
**speaker** 36:20
**specific** 19:21 21:10
**specifically** 19:20
33:12 38:24
**squarely** 19:8
**staff** 14:10
**staff's** 20:24
**staffing** 23:19
**stand** 5:11 18:17
32:21 35:9
**started** 37:25
**state** 5:12 19:21
34:12
**statement** 8:16 10:7
40:25
**states** 1:1 3:9 5:15
9:24 18:12 38:12
**static** 37:18
**statute** 8:23 25:7

**statutory** 5:18 10:4
10:9 17:22 47:13
**stay** 35:13
**step** 35:12
**stop** 13:25 16:8,10
30:5 41:25 43:4,25
44:2,2,4
**street** 3:12,20
**strike** 47:17
**student** 18:17 21:15
**subject** 41:23 47:20
**submit** 9:13,15
12:20 16:22 20:25
31:3 45:13
**submitted** 13:11
34:15,17
**subsequent** 40:19
**suggesting** 6:14
**suggestion** 32:15
**suggests** 28:3
**suite** 3:13 49:12
**summer** 18:13
**supervising** 19:15
25:24
**supplement** 24:19
28:1,10 45:17
**supplemental** 8:21
9:8,14 25:4,8 30:6
37:12,24 39:12,16
40:3 41:23 46:2
**supplementally**
40:5,14 41:9,11
**supplementation**
25:15
**supported** 39:5
**sure** 4:7,15 14:1
18:10 35:15,20 42:7
44:23
**surely** 6:5,9,14
**sustained** 5:20

**t**

**t** 49:1,1
**table** 35:13,19
**tables** 35:21
**tact** 14:23
**take** 7:16 10:25
46:9

**taken** 14:22 22:3
**takes** 22:20 25:6
38:21 40:13
**talk** 15:11 17:14
35:13 37:10
**talking** 21:3,6
**tease** 6:11
**teasy** 30:18
**telephone** 32:8
**tell** 6:7 17:1 28:13
31:24 39:13 46:5,7
**telling** 14:3 45:5
**term** 27:12,19
**terms** 19:22,23
21:11,24 27:14
**thank** 18:3,4,16,22
35:25 37:9 39:19
40:2 47:19,22,24
48:2,3
**themes** 30:23
**thing** 4:11,12 5:14
5:21 7:23 11:15
20:11 29:25 30:22
31:13 33:19 40:4,11
**things** 5:12 9:25
10:2 22:6 28:5 36:7
38:8,8 40:18 47:14
47:15
**think** 5:19 9:5,25
10:3 16:21,24 19:10
21:15 24:10 26:15
26:16,17 32:16,17
33:25 34:20 38:18
40:4,16 42:10 45:8
47:13,15
**third** 5:3 11:15,15
**thought** 5:15 8:22
35:3 40:16 47:12,12
**thousands** 8:4,6,11
**three** 5:12 7:12
21:25 26:10 38:14
**time** 8:15 11:4
12:19 22:22,22
23:18 26:18 34:22
35:14 38:22,23
46:15

[times - zealous]                                                                         Page 9

| | | | |
|---|---|---|---|
| **times**  21:25 26:2 | **two**  4:23 5:21 15:19 | **view**  6:7,9 24:9 | **work**  22:21 |
| **title**  19:13 | 15:20 22:6 24:1 | 25:18,20 28:11 | **worked**  14:25 |
| **today**  15:1 32:21 | 38:8,8,11 | 37:15 38:9 39:12,16 | **works**  41:2,2 |
| **togut**  30:18 | **type**  30:13 39:5 | 45:16 47:21 | **world**  38:21 |
| **told**  15:25 36:19 | **typos**  4:23 | **violation**  9:10,15,18 | **worst**  45:5 |
| **totally**  29:15 | | 25:3 | **written**  24:2 |
| **transcribed**  2:25 | **u** | **violations**  10:9 | **wrong**  6:20,21 10:4 |
| **transcript**  49:3 | **u.s.**  1:13,24 3:10,11 | **virtue**  31:1 | 20:18 47:11,12,15 |
| **transparency**  19:1 | 7:5 11:24,25 12:10 | **vitality**  37:17 | **wrote**  5:21 |
| 29:14 | 12:20,21,22 14:12 | **vividly**  8:20 | **x** |
| **treatment**  9:23 | 14:17 15:24 18:24 | **voluntarily**  9:8 | **x**  1:4,11 9:14 |
| **trenton**  18:14,16,20 | 19:2,6,8,14 20:20 | **w** | |
| 18:22 | 21:18 25:23 26:9,24 | | **y** |
| **triple**  6:6 | 28:14,16 29:3 30:23 | **w**  3:24 | |
| **tripling**  20:16 21:25 | 31:3,6,15,23 32:8,9 | **wait**  13:2 23:13 | **y**  9:14 |
| **troublesome**  31:1 | 33:20,21 35:5 39:1 | 26:10 33:7,7,7 | **yeah**  22:13 34:1 |
| **true**  49:4 | 45:20 47:8,11 | **want**  4:14 15:8,11 | 35:12 36:13 39:23 |
| **trustee**  2:2,5 3:3,10 | **ultimate**  24:7 34:9 | 22:2 30:22 31:8,12 | 42:7 |
| 3:11 4:16,17,20,21 | **understand**  10:20 | 31:13,21,24 39:8,9 | **year**  9:25 |
| 7:5 9:9,24 10:24 | 13:14 31:14 | 39:11,24 42:24 | **years**  8:14,17,18 9:5 |
| 11:24,25 12:10,20 | **understanding**  15:1 | 43:13,15 44:25 | 9:6,7 26:3,10,17,17 |
| 14:11,17 18:12 19:7 | 34:12 44:16,18 | **wanted**  7:3 23:12 | **yell**  43:24 |
| 19:14 20:16,19 | **understood**  13:10 | 42:7 | **yelling**  44:1 |
| 21:18 24:25 25:1,6 | **undertake**  38:24 | **wants**  42:10 | **yesterday**  4:3 |
| 25:23 26:10,24 | **undertaking**  33:16 | **ward**  2:5 3:18 | **york**  1:2,15,15 3:5 |
| 28:16 29:3,16 30:23 | **undisputed**  24:8 | **way**  13:15 14:3,7,24 | 3:14,22 20:6 32:10 |
| 30:24 31:3,6,15 | **unfamiliar**  19:5 | 22:4 32:20 33:8 | **z** |
| 32:8,9 33:21 35:5 | **unfortunate**  47:6 | 41:2,2 42:25 | |
| 38:1 39:1 42:9 | **united**  1:1 3:9 5:15 | **ways**  26:13 | **z**  9:14 |
| 45:20 46:10 47:8,12 | 9:24 18:12 | **weeks**  17:4 | **zealous**  36:4 |
| **trustee's**  5:15 12:22 | **unmitigated**  7:2 | **weigh**  19:7 | |
| 14:12 18:24 19:1,2 | **unreasonable**  27:19 | **welcome**  18:15,21 | |
| 19:9 20:20 28:14 | **unreasonableness** | **went**  8:20 9:5 24:10 | |
| 31:23 43:5 | 27:11,12 | 24:11 | |
| **trustees**  14:25 | **unrelated**  32:24 | **wheelhouse**  19:9 | |
| 19:16 21:19 25:25 | **urge**  46:14 | **wholeheartedly**  9:2 | |
| 25:25 26:2 32:10,14 | **ust**  5:24 7:25 13:1 | **willing**  46:20,23,24 | |
| 35:4 46:14 | 15:16,21 17:21 21:1 | 47:1 | |
| **truth**  36:23,24 45:6 | 33:12 40:13 | **wish**  5:12 | |
| **try**  12:19 23:13 | **ust's**  11:19 16:1 | **wolf**  17:11 34:15,19 | |
| 24:10 43:12,23 | **usually**  14:11 41:7 | 36:21 44:23 | |
| 47:25 | **v** | **wolf's**  11:18 | |
| **trying**  13:4 | | **wondering**  47:2 | |
| **turns**  22:19 | **vacation**  17:6 | **word**  4:3,6,10 5:3,9 | |
| **tweaks**  32:12 | **varick**  3:12 | **words**  4:10 10:15 | |
| **twists**  22:19 | **variety**  25:12 | 23:19 25:4 26:14 | |
| | **veritext**  49:10 | 42:17 | |